**Harold B. HUGHES and Nancy J. Hughes, Plaintiffs,**

v.

**UNITED STATES of America and Joseph Meltzer and the Des Plaines National Bank, Defendants.**

**No. 81 C 2706.**

United States District Court, N. D. Illinois, E. D.

Feb. 23, 1982.

Nancy J. Hughes, pro se.

Conklin & Adler, Ltd., Chicago, Ill., for plaintiff.

Dan K. Webb, U. S. Atty., N. D. Ill., for the U. S.

Robert Marc Chemers, Chicago, Ill., for Des Plaines Nat. Bank.

## MEMORANDUM AND ORDER

MORAN, District Judge.

In their amended complaint plaintiffs Harold and Nancy Hughes ("the Hugheses") seek recovery against the United States

under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, claiming that as a result of the United States involvement with Joseph Meltzer, also a defendant in this action, they suffered significant loss of income and harm to their reputations. The government has moved to dismiss or in the alternative for summary judgment, maintaining, among other things,[1] that the amended complaint, filed after the statute-of-limitations period ran, does not "relate back" to the date the original complaint was filed, and hence is untimely. For the reasons stated below, we reluctantly agree, and the United States is stricken from the complaint.

The underlying controversy concerns an alleged "sting" operation—nicknamed "Son of Abscam" by the press—run by Joseph Meltzer and aided in various ways by the Federal Bureau of Investigation ("FBI"). Neither party disputes that Meltzer was employed by the FBI as an informer, although the exact nature of his duties is, to say the least, unclear. At some point in this relationship, plaintiffs maintain, Meltzer learned that the FBI had created a fictitious investment firm named Abdul Enterprises, and a fictitious sheik named Kambler Abdul Rahman, to assist them in a congressional bribery probe, popularly known as Abscam.

On the basis of such information gleaned from the FBI, Meltzer devised a scheme whereby he presented himself to the plaintiffs as the president of a company, Foreign Investment Groups, Ltd., which he claimed was owned or controlled by a Saudi Arabian sheik. Induced by Meltzer's representations, the Hugheses entered into a financing plan with Foreign Investment Group, Ltd. to manufacture and sell equipment for the cable television industry. As a precondition to such an arrangement, however, Meltzer demanded $5,000 earnest money, and he encouraged the plaintiffs to call the FBI to verify the legitimacy of his company before paying the fee. The FBI, plaintiffs allege, vouched for Meltzer and the Foreign Investment Group;[2] satisfied by the FBI's assurances, the Hugheses eventually paid out $10,000 before the "sting" came to light. In addition to the lost money, plaintiffs allege that they have lost future income and profits, were forced to file for bankruptcy, and suffered embarrassment, humiliation and loss of esteem in their community and business relations.

As required under the Federal Tort Claims Act, plaintiffs submitted a claim for $32,754.73 in damages to the FBI, who referred it to the Department of Justice. On November 14, 1980, the agency denied the claim but informed the Hugheses that if they so desired they could file suit in an appropriate United States District Court no later than six months from the date of the letter. Accordingly, the Hugheses filed *pro se* their initial complaint on May 13, 1981, in which they sued only the United States Department of Justice and the FBI. Service of process on these agencies occurred thirteen days later, on May 26, 1981. Subsequently, plaintiffs retained counsel, and on August 21, 1981 an amended complaint naming the United States, Joseph Meltzer and the Des Plaines National Bank was filed.[3]

The applicable statute of limitations for commencement of an action against the United States under the Federal Tort Claims Act, 28 U.S.C. § 2401(b), provides:

> A tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after

---

1. Defendants also argue in their motion that the employee-employer relationship necessary to hold the United States liable does not exist here, and that the government has no duty to protect the Hugheses from Meltzer's misrepresentations.

2. Although the FBI allegedly knew of Meltzer's fraudulent activities, plaintiffs claim that the investigation into the informer's conduct was suppressed for fear of jeopardizing the Abscam operation.

3. The Des Plaines National Bank has recently moved to dismiss, arguing that the doctrine of pendent jurisdiction does not extend to confer jurisdiction over a party for whom no independent basis of federal jurisdiction exists.

such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

In their motion to dismiss, the government contends that plaintiffs failed to bring suit in a timely manner for two reasons. First, although the complaint was filed within the statute-of-limitations period, it was served almost two weeks after the period ran and therefore was not timely. Second, the original complaint did not name the United States as a party, and later amendments cannot relate back to cure this defect when no notice was received within the statutory time limit. The former argument can be summarily rejected; the latter merits more detailed discussion.

■ Without citing any case law or statutory language to support their position, defendants baldly assert that "filing a complaint does not suffice to initiate an action within six months under 28 U.S.C. § 2401(b). Actual service within the six-month period is imperative to toll the statute." Contrary to defendant's insistence, an action is begun, at least for purposes of § 2401(b), by the filing of a verified complaint. *See Bates Manufacturing Co. v. United States*, 303 U.S. 567, 572, 58 S.Ct. 694, 696, 82 L.Ed. 1020 (1938). *Cf. McGowan v. Williams*, 623 F.2d 1239 (7th Cir. 1980); *Steele v. United States*, 599 F.2d 823 (7th Cir. 1979). Since no one questions that the original complaint was *filed* within the statute-of-limitations period, no jurisdictional problems are presented solely by the fact that service occurred outside the period.

■ Resolving the government's second argument, that the amendment naming the United States as a defendant does not relate back to the time of filing, and thus the court lacks jurisdiction over the government, poses greater difficulties. Under the Federal Tort Claims Act a federal agency cannot be sued in its own name and the action must be brought against the United States despite the authority of an agency to sue or be sued. *See Stewart v. United States, et al.*, 503 F.Supp. 59 (N.D.Ill.1980), *aff'd* 659 F.2d 1084 (7th Cir. 1981). Since plaintiffs failed to name the United States as a party until many months after the limitation period had passed, the action against the United States can be maintained only if the amended complaint is held to "relate back" to the date of the original complaint. Federal Rule of Civil Procedure 15(c) provides the standards for determining when an amendment relates back:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. *An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing an action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action* that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him. (Emphasis added.)

■ Defendants, noting the maxim that a waiver of sovereign immunity under the Federal Tort Claims Act is to be strictly construed, contend that the amendment cannot relate back to the time the complaint was filed because the first time the United States received notice concerning the institution of a lawsuit occurred on May 26, 1981 (when the complaint was served on the agencies)—beyond the six-month statute-of-limitations period.

If we were writing on a "blank slate," we would reject such an approach, finding instead that "under Rule 15(c), the period within which the 'party to be brought in' must receive notice of the action includes the reasonable time allowed under the Federal Rules for service of process. We think

this interpretation is permissible and desirable and carries out the beneficent purpose of the 1966 amendments." *Ingram v. Kumar*, 585 F.2d 566, 571 (2d Cir. 1978), *cert. denied*, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979). As the Second Circuit recently explained:

> Although on its face the phrase "within the period provided by law for commencing the action against him," seems to mean the applicable statute of limitations period, such a literal interpretation is unjustified in jurisdictions where timely service of process can be effected after the statute of limitations has run. In those jurisdictions, even an accurately named defendant may not receive actual notice of the action against him prior to the running of the statute of limitations. Yet there is no doubt that the action against him is timely. There is no reason why a misnamed defendant is entitled to earlier notice than he would have re-

ceived had the complaint named him correctly.

*Ingram v. Kumar, supra,* at 571.

The anomaly of dismissing an action which "against the original defendant . . . would be considered timely brought despite the delayed service," Kaplan, "Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)," 81 *Harv.L.Rev.* 356, 410 n.204 (1967) is all the greater when, for all practical and legal purposes, the original party and the party to be brought in are identical. In the case at bar, whether the United States or the Department of Justice is named as the defendant, the same person is served, the same party appears in court, and the same entity bears the risk of loss.[4]

Although the court in *Ingram* dealt with a mistake in the name of a private party, no greater burden is imposed under 15(c) because the error concerns the federal government. While prior to the 1966 Amend-

---

**4.** Defendants characterize the amended complaint as *changing* the party to be sued, and hence, subject to the requirements outlined in the second sentence of 15(c). In the alternative, a persuasive argument can be made that this case does not involve a change in parties, but merely a misnomer, analogous to misspelling a given name, or leaving "Ltd." out of a corporation's title. Amendments to correct misnomers, the argument goes, need not satisfy the requirements set forth in the second sentence of the rule, which is geared to "changing parties."

One district court, in an opinion tracing the history of Rule 15(c), noted:

Prior to the 1966 Amendments to Rule 15(c), (the Rule) consisted solely of the language which is now the first sentence of the amended Rule . . . . The 1966 Amendments . . . were an attempt to liberalize and clarify its provisions. It certainly was not considered an attempt to restrict the liberality of amendments or their relation back. We do not think the added language (of Rule 15(c)) can properly be construed to make more difficult the correction of misnomers and its relation back. We think there is a difference between correcting a misnomer and "changing a party" and that a misnomer may be corrected under the first sentence of Rule 15(c) as amended (the old Rule 15(c)).

*Washington v. T. G. & Y. Stores Co.*, 324 F.Supp. 849, 856 (W.D.La.1971) (supplemental opinion). Similarly, the Seventh Circuit, quoting with approval the language of an earlier case, stated, ". . . amendment with relation

back is generally allowed in order to correct a misnomer of defendant where the proper defendant is already in court and the effect is merely to correct the name under which he is sued. But a *new defendant* cannot normally be substituted or added by amendment after the statute of limitations has run." *Simmons v. Fenton*, 480 F.2d 133, 137 (7th Cir. 1973) (emphasis supplied). *But see* Advisory Committee Note to Rule 15(c), 39 F.R.D. 82 (1966).

Viewing the amendment as merely correcting a misnomer, and hence not subject to the requirements in the second sentence of 15(c), or alternatively, finding that the amendment is subject to the standards of the second sentence of the Rule, but fulfills them, appear to this court to be superior approaches to the problem than that adopted by the Seventh Circuit. *See* discussion on page 356, *infra*. To condition an important right against the government on the happenstance of when a party is served, particularly considering that service is often out of the control of the plaintiff, and instead, in the hands of the United States Marshal, seems disingenuous. *Cf. McGowan v. Williams*, 623 F.2d 1239, 1243 (7th Cir. 1980) (timeliness of suit cannot be determined by date of removal because that date is determined by actions of the United States and is totally out of the control of the plaintiff; even if the U. S. Attorney does not act in a dilatory manner Congress did not intend to allow the United States to "sandbag" plaintiffs).

ments some courts had been more reluctant to relate back amendments in actions against the United States than in suits between private parties because of the principle that any waiver of sovereign immunity be strictly construed, the amendments remove this inhibition, "guaranteeing to a plaintiff at least the same liberal treatment when he sues the federal government that he would receive if the defendant were a private party." 3 J. Moore, *Federal Practice* ¶ 15.15 at 15–234 n.25.

But, unfortunately, this court is constrained by the dictates of the Seventh Circuit on this issue, spelled out in *Stewart v. United States*, 655 F.2d 741 (7th Cir. 1981). In that case, which is factually indistinguishable from the one at bar,[5] the Court declared that:

> ... Relation back under 15(c) requires, however, that actual notice be received by the Government within the period provided by law for commencing the action. That notice must comply with Rules 4(d)(4) and (5). No notice, formal or informal, occurred during the limitations period here. Having elected to file suit on the last day of the limitations period, plaintiff requests us to add to that period a "reasonable time" for service of process. We cannot expand the fully adequate six month period established by Congress. At 742 (citations omitted).

Accordingly, the motion to dismiss the government is, most reluctantly, granted.

---

**5.** There are some factual distinctions between the cases that would present compelling arguments for relating back in the present case, were equitable considerations permitted. First, in the *Stewart* case, the plaintiff had been told in the letter from the federal agency denying her claim, that a suit must be filed against the *United States* within six months. Here, plaintiffs were only told that they had six months to file suit in an appropriate district court. Moreover, the plaintiff in *Stewart* was represented by an attorney; indeed, the Seventh Circuit, in a moment of candor, alerted the plaintiff to a possible malpractice remedy against her lawyer. In the case at bar, the Hugheses initially proceeded pro se. Unfortunately, under the Federal Tort Claims Act, no equitable considerations such as waiver, estoppel, or other implied exceptions are applicable. *Best Bearings Co. v. United States*, 463 F.2d 1177, 1179 (7th Cir. 1972); *Binn v. United States*, 389 F.Supp. 988, 991 (E.D.Wis.1975).