Jeffrey ODENCE, Plaintiff,

v.

SALMONSON VENTURES, Maxwell R. Carter and Co., Inc., and Tyler Reed Company, Defendants.

Civ. A. No. 84–0702–S.

United States District Court, D. Rhode Island.

Nov. 13, 1985.

Kenneth Littman, Middletown, R.I., Joseph A. Lopisi, Albert E. Grady, Brockton, Mass., for plaintiff.

Hinckley & Allen, Providence, R.I., and Gidley, Lovegreen & Sarli, Robert W. Lovegreen, Providence, R.I., for defendants Tyler Reed Co. and Salmonson Ventures.

Gorden E. Levitt, Stephen A. Gorden, and Winograd, Shine & Zacks, P.C., John

A. Murphy, Providence, R.I., and Goldstein, Burkin, Wennett & Carter, Floyd H. Anderson, Jr., Boston, Mass., for defendant Maxwell R. Carter & Co., Inc.

## OPINION AND ORDER

SELYA, District Judge.

This case comes before the court on the motion of Tyler Reed Company (Reed), a defendant herein, seeking *brevis* disposition of the claims against it, in pursuance of Fed.R.Civ.P. 56. The plaintiff has objected. Oral arguments were heard by the court on October 10, 1985 and decision was reserved.

The pleadings, affidavits, and statements of material fact, *see* D.R.I.L.R. 12.1(a), (b), on file present a question of novel impression in this district as to the meaning, intendment, and application of Fed.R.Civ.P. 15(c). The First Circuit has not addressed the precise point at issue. Other circuits are divided on the question. *Compare Ingram v. Kumar*, 585 F.2d 566, 569–71 (2d Cir.1978), *cert. denied*, 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979) *with Shiavone v. Fortune*, 750 F.2d 15, 18 (3d Cir.1984), *cert. granted*, —— U.S. ——, 106 S.Ct. 56, 88 L.Ed.2d 45 (1985).

Inasmuch as the submissions of the parties raise no genuine controversy as to any fact at issue, the case is in a proper posture for Rule 56 consideration. *See, e.g., Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir.1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976); *United Nuclear Corp. v. Cannon*, 553 F.Supp. 1220, 1226 (D.R.I. 1982). And, as this court observed in *Kussmaul v. Peters Construction Company, Inc.*, 563 F.Supp. 91, 92 (D.R.I.1983): "Assertion of the preclusory bar of a statute of limitations by way of a motion for summary judgment is appropriate with no relevant facts in dispute." *See also Admiralty Fund v. Jones*, 677 F.2d 1289, 1293 (9th Cir.1982) (same).

The court will approach the question *sub judice* by reviewing, first, the travel of the case and the pertinent facts. The court

will then turn to an explication and resolution of the controlling legal issues.

## I. BACKGROUND

Jeffrey Odence, the plaintiff herein, is a citizen and resident of Brockton, Massachusetts. He has duly invoked this court's diversity jurisdiction, 28 U.S.C. § 1332(a), to complain of the allegedly tortious conduct of various entities organized under the laws of, and domiciled in, Rhode Island.

Odence's troubles began on December 21, 1981. At that time, he claims to have been injured while operating a forklift on property situated at 500 Mineral Spring Avenue in Pawtucket, Rhode Island. He contends that the proximate cause of his injury and the damages consequent thereto was either (i) the landowner's unsafe design and maintenance of the premises or (ii) the failure of the temporary occupier thereof, the defendant Maxwell R. Carter and Co., Inc. (Carter), to warn Odence of the hazard or to alter its use of the structure to take account of the inherent danger.

On December 19, 1984, Odence brought suit against two defendants, viz., Salmonson Ventures (Ventures)[1] and Carter. In his two count complaint, Odence alleged that these defendants were jointly and severally liable for the injuries which he sustained on December 21, 1981 (Ventures because it owned the site and Carter because of its occupancy and control). The action was commenced, Fed.R.Civ.P. 3, within Rhode Island's three year period of limitations applicable to personal injury suits, R.I.Gen.Laws § 9–1–14, but with only a day to spare. Ventures was served with the summons and complaint on or about December 28, 1984 (some seven days after the limitations period had expired).

Following both the onset of discovery and certain preliminary skirmishing not material at the moment, Ventures moved for summary judgment in its favor, establishing incontrovertibly in connection therewith that it did not in fact own the Pawtucket property. This court granted Ventures's motion on April 11, 1985, by submission. Shortly thereafter, however, Odence moved for leave to amend his complaint. That motion was granted on June 6, 1985. The amended complaint named a new defendant, Reed, and asserted that Reed was the owner of the accident site. The newcomer was served on July 8, 1985.[2]

## II. CONTENTIONS OF THE PARTIES

Reed, while admitting its ownership of the subject premises, now moves for summary judgment, arguing that the plaintiff's suit against it is time-barred. The centerpiece of Reed's thesis is that, inasmuch as neither it nor Ventures had knowledge of Odence's suit until after the limitations period had run, Rule 15(c) does not apply, and the belated effort to haul Reed into the litigation was out of season.

The plaintiff's rejoinder is double-barrelled. He argues, first, that Reed has permitted any such defense to slip through the cracks by neglecting to plead it with the requisite specificity. Apart from a theory of waiver, Odence likewise disputes the defendant's vision of the merits: relying heavily on the established fact that Ventures and Reed are related entities (a common officer, Donald Salmonson, is a principal of each entity, and the two concerns are insured under a single blanket liability policy), the claimant contends that the filing of the amended complaint against Reed relates back to the commencement of the action against Ventures, that is, to the time when the original complaint was docketed in the clerk's office, and is thus timely.

## III. PRESERVATION OF THE LIMITATIONS DEFENSE

██ The plaintiff's initial sally need not long detain the court. Odence remon-

---

1. Although Ventures was described in the complaint as a Rhode Island corporation, it appears to have been an unincorporated association. But, it is unnecessary for the court to untangle that particular skein at present. Whatever the entity form, the existence of diversity jurisdiction would on these facts be unaffected. In any event, Ventures has heretofore departed from these unfriendly shores on the wings of a summary judgment initiative. *See* text *post.*

2. *See* Appendix A for a time line depicting the relevant dates in issue.

strates, without any citation to respectable legal precedent, that Reed, by not properly asserting late service in its answer, has waived the right to raise the point by an ensuing Rule 56 motion.

To be sure, Fed.R.Civ.P. 8(c) mandates that when responding "to a preceding pleading, a party shall set forth affirmatively ... statute of limitations ... and any other matter constituting an avoidance or affirmative defense." And, failure to follow this directive can, in appropriate circumstances, bring about dire consequences. *See, e.g., Dunn v. Koehring Co.*, 546 F.2d 1193, 1198–99 (5th Cir.1977) (district court did not abuse its discretion in refusing to permit defendant in warranty action to amend its answer to raise statute of limitations defense on the morning of trial, five years after filing of action); *Senter v. General Motors Corp.*, 532 F.2d 511, 530 (6th Cir.1976) (district court did not abuse its discretion, after rendition of decision, in refusing to permit defendant in an employment discrimination class action to amend its answer to assert statute of limitations).

Yet, the imperatives of Rule 8(c) cannot be read in a vacuum. Fed.R.Civ.P. 8(e)(1) warns that "[e]ach averment of a pleading shall be simple concise, and direct." The same rule cautions that "[n]o technical forms of pleading" are required. *Id.* Fed. R.Civ.P. 8(b) counsels that defenses shall be stated "in short and plain terms." And, Rule 8(f) admonishes that "[a]ll pleadings shall be construed as to do substantial justice."

In the case at bar, the defendant did not overlook the timeliness *vel non* of the suit when it initially replied to the amended complaint. Rather, Reed asserted, in the fifth paragraph of its answer, that "Plaintiff ought not to have this action inasmuch as it was brought subsequent to the expiration of the applicable statute of limitations in this matter."

The plaintiff's attempt to read this defense so narrowly as to create a forfeiture, raised for the first time on the eve of oral argument, smacks of post hoc rationalization. It is, in any event, jejune. The position adopted by Reed anent the instant motion, at the bottom line, tracks its affirmative defense and invokes the statute of limitations. If, as Reed urges, Fed.R. Civ.P. 15(c) fails to operate in these precincts, then in such event the amended complaint does not relate back to the filing of the original complaint. As a result, the date of commencement of the action, insofar as Reed was concerned, would be the date when the amended complaint was filed (June 6, 1985). Since the cause of action accrued on the date of Odence's injury (December 21, 1981) and the applicable statute of limitations, R.I.Gen.Laws § 9–1–14, was three years, the plaintiff's suit against Reed would be out of time by close to a full six months. By any fairminded reading, the fifth paragraph of the defendant's answer sufficed, in a simple, concise, and direct manner, to put the Rule 15(c) problem directly in issue.

The fundamental purpose of Rule 8(c) is to avoid litigation by ambush. A defendant must fairly apprise the plaintiff of special, nonroutine defenses which it seeks to assert. *See Hardin v. Manitowoc-Forsythe Corp.*, 691 F.2d 449, 458 (10th Cir.1982) ("The policy behind Rule 8(c) is to put plaintiff on notice well in advance of trial that defendant intends to present a defense in the nature of an avoidance."); *cf. Amelio v. Yazoo Manufacturing Company*, 98 F.R.D. 691, 693 (N.D.Ill.1983) ("notice pleading concepts apply to defenses [under Rule 8(c) ] just as to complaints"). Reed in this instance correctly characterized its affirmative defense as one which rested upon the applicable statute of limitations. Odence was fairly forewarned of Reed's intentions. No more detailed exegesis of the defendant's strategy was required. In the last analysis, the court has scant hesitancy in declining the plaintiff's invitation to split fine hairs in so mindless a fashion.

## IV. RELATION BACK

Fed.R.Civ.P. 15(c) lies at the heart of the

instant motion.[3] Prior to 1966, federal courts had shown a proclivity to interpret Rule 15 in a variety of (often conflicting) ways. *See* 6 Wright & Miller, *Federal Practice and Procedure* § 1498 at 506 nn. 83–84 (1971 to 1977 Supp.); 3 Moore *Federal Practice* ¶¶ 15.15[4.–1] to [4.–2] (1974 & 1977–78 Supp.) In 1966, Rule 15(c) was amended to supply more clearly delineated criteria with a view toward prevention of such inconsistent results. *See* Kaplan, *Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I)*, 81 Harv.L.Rev. 356, 407–10 (1967). Rule 15(c) now provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, *within the period provided by law for commencing the action against him*, the party to be brought in by amendment
>
> (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the ac-

tion would have been brought against him. (emphasis supplied).

For purposes of the case at bar, the first of the rule's requirements is clearly met. Odence's claim against Reed arises out of the same conduct and occurrence described in his original complaint. But, inasmuch as the amended complaint changes the party against whom the claim was asserted (positing landowner's liability on the part of Reed instead of Ventures), the plaintiff must also demonstrate compliance with the remainder of Rule 15(c).

It is well to pause and reflect at this juncture. As to Ventures, the plaintiff concededly tolled the statute of limitations by bringing suit in this court on December 19, 1984. *See* Appendix A. Ventures was obviously named as a defendant by virtue of a careless mistake; Odence erroneously believed Ventures to be the owner of the Pawtucket property. There is little danger of prejudice, as both Ventures and Reed are insured under the self-same liability policy. In the usual case, given that the claim arises out of the same incident as was described in the original complaint, and given the apparent existence of a sufficient identity of interest between the original defendant (Ventures) and the substituted defendant (Reed) such that Reed knew or should have known of the claim and of

---

**3.** Rhode Island law on civil procedure, specifically that expounding upon the relation back doctrine, is directly aligned with the federal law interpreting Fed.R.Civ.P. 15(c). *See Dalessio v. B.T. Equipment Co.*, 114 R.I. 524, 336 A.2d 563, 566 (1975) (construing Rhode Island counterpart to Fed.R.Civ.P. 15(c) to require actual notice of institution of plaintiff's lawsuit prior to running of statute of limitations). In fact, Rhode Island Superior Court Rule of Civil Procedure 15(c) is an exact duplicate of its federal forebear. As a result, this court need not determine whether the United States Supreme Court's decision in *Walker v. Armco Steel Corp.*, 446 U.S. 740, 100 S.Ct. 1978, 64 L.Ed.2d 659 (1980) is applicable here. In *Walker*, the Supreme Court was presented with the question of whether, on the one hand, a state statute of limitations requiring service of process to toll the limitations period, or on the other hand, the federal rule requiring filing, was apposite. The Court noted that the state statute represented an

important expression of sovereign policy which protected a defendant from the burden of defending stale claims. *Id.* at 751, 100 S.Ct. at 1985. The Court then held that the state provisions applied because they comprised a salient ingredient of the state's philosophy anent the prosecution of untimely claims. *Id.* at 752, 100 S.Ct. at 1986. But, in the absence of a state statute or decision contrary to the federal procedural rule (precisely the situation here), *Walker* has no effect. In any event, the Rhode Island courts have exhibited a willingness to follow federal precedents and interpretations in construing parallel state procedural rules (which, after all, were for the most part modelled upon the Federal Rules of Civil Procedure). *See, e.g., Bragg v. Warwick Shopper's World, Inc.*, 102 R.I. 8, 227 A.2d 582, 584 (1967) ("we apply the guides established in the federal courts for the construction of their rules upon which ours have been molded.").

the plaintiff's bevue,[4] the claimant would be allowed to join the substituted defendant without fear of a limitations defense.

But, this is not the usual case. Rule 15(c) also provides that the party to be added must have received notice of the institution of the suit "within the period provided by law for commencing the action against [it]." The three year statute of limitations applicable to Odence's personal injury claim expired after the plaintiff had filed his complaint against Ventures, but *before* service was effected upon that defendant. *See* Appendix A. Reed asseverates that, even though it possessed common interests with Ventures, it could not have known of the suit until December 28, 1984 (the date upon which Ventures was served) at the earliest; that "the period provided by law for commencing the action" against Reed had run its course by that time; that the requirements of Rule 15(c) have not in that wise been satisfied; that there can, therefore, be no "relation back;" and that the claim against it is perforce time-barred.

Viewed in this light, the crux of the matter is whether or not the filing of the original complaint, as opposed to the service of process upon the original defendant, constituted sufficient notice of the institution of the action within the three year limitations period to comport with the express requirements of Rule 15(c). The paradox is apparent. The "notice of the institution of the action" of which Rule 15(c) speaks means exactly that; the authorities are consentient that knowledge of a potential claim is not equivalent to knowledge that a suit has been started. *E.g., Archuleta v. Duffy's, Inc.,* 471 F.2d 33, 35 (10th Cir.1973); *Craig v. United States,* 413 F.2d 854, 858 (9th Cir.), *cert. denied,* 396 U.S. 987, 90 S.Ct. 483, 24 L.Ed.2d 451 (1969); *Tretter v. Johns-Manville Corp.,* 88

F.R.D. 329, 331 (E.D.Mo.1980). (Even in these litigious times, many causes of action accrue which, whether by ignorance or by forbearance or by conciliation, never blossom into lawsuits.) It seems eminently reasonable that "one cannot have notice that a suit has been brought against him until he hears of it." *Martz v. Miller Bros. Co.,* 244 F.Supp. 246, 254 (D.Del.1965). Thus, if Reed could not have known of the institution of the action until Ventures was served (after the three year limitations period had lapsed), a strict reading of Rule 15(c) would outlaw the subsequent effort to add Reed as a party defendant. Yet Ventures—in whose shoes Reed stands to some degree, by reason of the identity of interest, *see* n. 4 *ante*—was itself timely haled into court. As respects an original named defendant, suit is seasonable so long as the complaint is filed before the statute runs and is followed (as was the case here) by reasonably prompt service, even if the service itself was effected beyond the limitations period. *E.g., Ingram v. Kumar,* 585 F.2d at 571 ("[E]ven an accurately named defendant may not receive actual notice of the action against him prior to the running of the statute of limitations. Yet there is no doubt that the action against him is timely commenced [when the complaint is docketed before the expiration of the limitations period]"); *Tretter v. Johns Manville Corp.,* 88 F.R.D. at 332 (same); *Bergstreser v. Mitchell,* 448 F.Supp. 10, 14 (E.D.Mo.1977). *Cf.* Fed.R.Civ.P. 4(j).

Though novel to this district, such a factual anomaly has occurred before. Several federal courts have confronted similar fact patterns and have endeavored to resolve the question under Rule 15(c). Uniformity, however, has been lacking. Two distinctly divergent schools of thought have emerged. The more expansive view, which

---

4. The identity of interest concept teaches that the original defendant's awareness of the institution of a timely-filed action serves as constructive notice of the action to parties added after the statute of limitations period has expired when the original and added parties are so closely related in business or other activities that it is fair to presume that the added parties learned of the institution of the action shortly after it was commenced. *Hernandez Jimenez v. Calero Toledo,* 604 F.2d 99, 103 (1st Cir.1979). Reed's counsel, at oral argument, confessed that, apart from the particular timeliness argument inherent in the peculiar facts of this case, Ventures and Reed were linked together in such a way as to bring this concept to bear.

appears to be in the minority, is best represented by the Second Circuit's decision in *Ingram v. Kumar, supra.* In that case, the plaintiff in a medical malpractice action filed suit in the district court shortly before the statute of limitations ran. She named as the defendant "Dr. Vijaya N. Kumar." When service was attempted on "Dr. Vijaya N. Kumar," it was discovered that he had never treated Ms. Ingram; the desired defendant was a similarly-named physician, Dr. Vijay S. Kumar. The latter was served some fifteen weeks after the statutory period for bringing suit had lapsed.

The defendant moved to dismiss on limitations grounds, and the plaintiff cross-moved to amend under Fed.R.Civ.P. 15(c). The district court denied the former motion and granted the latter. The Second Circuit affirmed. The court reasoned that a literal interpretation of the rule was unjustified, at least in jurisdictions where timely service of process was permissible after the statute of limitations has run. *Id.* at 571.[5] The *Ingram* panel, noting that the original and newly added second defendant would be treated disparately if Rule 15(c) was read strictly, held that "[t]here is no reason why a misnamed defendant is entitled to earlier notice than he would have received had the complaint named him correctly." *Id.* The court, in reaching this result, found especial solace in the admonition that, in the federal courts, leave to amend should "be freely given when justice so requires," Fed.R.Civ.P. 15(a), and concluded that "this interpretation is permissible and desirable and carries out the beneficent

purposes of the 1966 amendment." 585 F.2d at 571–72 (footnote omitted).

Several district courts, including at least one in this circuit, have adhered to the *Ingram* view. *See United States for the Use and Benefit of Arrow Electronics, Inc. v. G.H. Coffey Co., Inc.,* 100 F.R.D. 413, 416–17 (D.Me.1983); *Ratcliffe v. Insurance Co. of North America,* 482 F.Supp. 759, 763 (E.D.Pa.1980); *Davis v. Krauss,* 478 F.Supp. 823, 826 (E.D.N.Y. 1979); *Mitchell v. Hendricks,* 68 F.R.D. 564, 568–69 (E.D.Pa.1975).

But, despite its superficially compelling appeal, the *Ingram* approach has not been widely emulated.[6] The majority of courts dealing with problems of this genre have arrived at a contrary conclusion. *See, e.g., Shiavone v. Fortune,* 750 F.2d at 18; *Williams v. United States,* 711 F.2d 893, 898 (9th Cir.1983); *Hughes v. United States,* 701 F.2d 56, 59 (7th Cir.1982); *Simmons v. Fenton,* 480 F.2d 133, 136 (7th Cir.1973); *Archuleta v. Duffy's Inc.,* 471 F.2d at 35; *Cook v. Starling,* 594 F.Supp. 177, 178 (N.D.Ill.1984); *Tretter v. Johns Manville Corp.,* 88 F.R.D. at 331–32; *Holden v. R.J. Reynolds Industries,* 82 F.R.D. 157, 162 (M.D.N.C.1979); *Bazzano v. Rockwell International Corp.,* 439 F.Supp. 1167, 1172 (E.D.Mo.1977), *rev'd on other grounds,* 579 F.2d 465 (8th Cir.1978); *Martz v. Miller Bros. Co.,* 244 F.Supp. at 254. At least one district court in this circuit has joined the majority parade. *See Magno v. Canadian Pacific, Ltd.,* 84 F.R.D. 414, 415 (D.Mass. 1979). These courts hold that the plain language of Rule 15(c) commands such a result. The rule requires notice of the suit

---

5. Rhode Island law permits effective service of process on a named defendant after expiration of the applicable statute of limitations. *See, e.g., Germano v. Campbell,* 116 R.I. 524, 359 A.2d 34, 36–37 (1976) (although filing of complaint tolls statute of limitations, plaintiff permitted reasonable time to effect service); *Burns v. Hirsch,* 108 R.I. 251, 274 A.2d 421, 423 (1971) (same).

6. *Ingram* can, of course, conveniently be set to one side as a case involving a misnomer rather than a substitution of parties defendant. And, there is respectable authority for the proposition that mere errors in nomenclature can be

corrected under the first sentence of Fed.R. Civ.P. 15(c), without recourse to the more rugged terrain of the 1966 amendments governing changes in parties. *E.g., Armijo v. Welmaker,* 58 F.R.D. 553, 556 (D.Ariz.1973); *Washington v. T.G. & Y Stores Co.,* 324 F.Supp. 849, 856 (W.D.La.1971); *Wentz v. Alberto Culver Co.,* 294 F.Supp. 1327, 1328–29 (D.Mont.1969). But, since the Advisory Committee's Note to Rule 15(c), 39 F.R.D. 82, 83 (1966), indicates that such a procedure is suspect, and inasmuch as the *Ingram* court itself eschewed such an easy way out, 585 F.2d at 580 & n. 6, this court treats *Ingram* as precedent directly in point.

within the time provided by law for the commencement of the action. And, in the absence of such notice, relation back cannot occur.[7]

This court recognizes that the search for justice must be a qualitative one, and that blind allegiance to any majority proposition has little to commend it. Cases wrongly decided, no matter how numerous, cannot outweigh a lesser number of decisions arriving at an opposite (correct) conclusion. In this instance, however, the holding reached by the majority of the reported cases represents the better-reasoned view.

■ Just as any issue of statutory construction must begin (and often end) with the language of the statute itself, *North Haven Board of Education v. Bell,* 456 U.S. 512, 520, 102 S.Ct. 1912, 1917, 72 L.Ed.2d 299 (1982), construction of a rule of procedure must start with the verbiage of the rule. The clear, explicit language of Rule 15(c) demands that, when a change in the identity of parties is in prospect, "notice of the institution of the action" must be received "within the period provided by law for commencing the action" against the new party. There is nothing uncertain or amphibolous in the plain wording of the rule. *Kumar* and its progeny would, by interpolation, revise Rule 15(c) to read that the requisite notice must be received "within the period provided by law for service of the original process;" yet the draftsmen of the rule could have—but did not—choose to

word it in that fashion. When the language of a statute, ordinance, or rule is clear and unambiguous, courts may not interpose their own notions of the underlying intent. *See, e.g., Yates v. United States,* 354 U.S. 298, 305, 77 S.Ct. 1064, 1069, 1 L.Ed.2d 1356 (1957) (where no ambiguity in words of statute, no room for judicial construction); *Browder v. United States,* 312 U.S. 335, 338, 61 S.Ct. 599, 601, 85 L.Ed. 862 (1941) (no single argument has more weight in statutory interpretation than the plain meaning of the words of a statute). Where the call of the framers is muted or uncertain, judges must interpret, and in interpreting, judges must often create. But where, as here, the call is clear and undistorted, the effort to rewrite a statute or rule under the guise of judicial interpretation invades territory forbidden to the courts.

Adherents of the *Kumar* doctrine will no doubt attempt to debunk such steadfast allegiance to the letter of the rule: they will exhort that, like the Pharisees, courts which construe Fed.R.Civ.P. 15(c) narrowly are obsessively concerned with the symbols of piety at the expense of adequate concern with the spirit. But, this court perceives no inequity in a straightforward application of Rule 15(c) as written. Historically, the purpose of a statute of limitations is to insure against the prosecution of stale claims and comcomitantly, to apprise a pu-

---

**7.** Both parties cite to, and rely upon, Judge Biunno's decision in *Robbins v. Marine Transport Lines, Inc.,* 531 F.Supp. 14 (D.N.J.1981). Odence reads *Robbins* through rose-colored glasses; it is staunch authority for Reed's theory of the case. In *Robbins,* the statute of limitations ran on March 14, 1980; the plaintiff had sued Marine Transport, Inc. by means of a complaint filed on November 29, 1979 and served on May 27, 1980. Judge Biunno rejected the plaintiff's effort thereafter to join Union Carbide Corporation as a defendant:

For Rule 15(c) to have been satisfied when a new party is brought in by amendment, it must appear that *within the period provided by law* for commencing the action against him (i.e., within the period of limitation) the new party has received notice "of the institution of the action," i.e., the original action in which he was not named.

Assuming that Marine Transport is treated as Union Carbide's agent for this purpose, namely that Union Carbide will be taken to have received notice that the action against Marine Transport had been instituted when Marine Transport did, that event did not occur until May 27, 1980, more than two months after the statute had run.

Thus, the first conceivable notice to Union Carbide that the original action had been instituted was on the date service was effected on its agent, and that occurred after the statute had run.

The rule is clear and explicit, and needs no construction or interpretation. This essential condition for relation back was not satisfied. *Robbins,* 531 F.Supp. at 15 (emphasis original).

tative defendant in due season that its conduct is being challenged. *E.g., Crown Cork & Seal Co. v. Parker,* 462 U.S. 345, 352, 103 S.Ct. 2392, 2396, 76 L.Ed.2d 628 (1983) (limitation periods are intended to put defendants on notice of adverse claims and to prevent plaintiffs from sleeping on their rights). Rule 15(c) was amended in 1966, as *Kumar* acknowledges, "to establish criteria that would lead to more uniform and equitable results," 585 F.2d at 569, thereby relaxing to a limited extent the inflexibility of such temporal restraints. The amendments did not purport, however, to abolish limitations periods wholesale, or to commit the "relation back" question exclusively to the discretion of the district courts. Rather, the draftsmen extended the largesse of Rule 15(c) not on a silver platter, but in a vessel hedged about with definite, clearly-expressed preconditions. If an errant plaintiff, as in this case, fails to meet those preconditions, it seems neither unfair nor inequitable to deny him the exceptional balm of the amendments and to hold him to the usual principles governing statutes of limitations.

■ This court is similarly unimpressed with the argument that strict application of Rule 15(c) as written places an afterthought defendant in a more advantageous position than an original defendant. Admittedly, such a result is inherent in the literalistic formulation of Fed.R.Civ.P. 15(c) adopted by this court: suit is timely as to a party sued at the outset even though that defendant may not obtain meaningful notice of the litigation until after the limitations clock has sounded its final tick; as to a party joined by subsequent amendment, however, actual notice of the suit must have been received within the limitations period. But, that result is a perfectly understandable one; inasmuch as resort to a "relation back" standard is itself a special dispensation to a plaintiff who has erred or miscalculated in the first instance, and places a commensurate burden on a late-sued defendant, it does not strike this court as unfair, unconscionable, or even anomalous that the plaintiff should be held more stringently accountable when he seeks belatedly to drag an afterthought defendant into the fray.[8]

■ This case aptly illustrates the relative equities. Here, the plaintiff—by filing his complaint only two days prior to the expiration of the statute of limitations—assumed the risk of the result mandated by Rule 15(c).[9] As a sister court has observed:

---

**8.** This is not a situation where the accepted federal doctrine of fraudulent concealment—a prudential rule which, where applicable, delays the commencement of a limitations period until the claimant discovers the existence of his cause of action—plays a part. In the first place, Odence's counsel, at oral argument, disclaimed reliance on this tenet. Secondly, invocation of the doctrine requires (i) fraud or deliberate concealment of material facts by the defendant and (ii) failure on the part of the plaintiff to unearth those facts during the wonted limitations period notwithstanding the exercise of due diligence. *Hernandez Jimenez v. Calero Toledo,* 604 F.2d 99, 101 (1st Cir.1979); *Briley v. California,* 564 F.2d 849, 855 (9th Cir.1977). Both preconditions are unfulfilled in the case at bar. Although the affidavit of attorney Lopisi and the attachments thereto make it plain that Reed's insurer (Transamerica) was not particularly forthcoming in volunteering information, it was under no duty to do so. *Cf. Hernandez Jimenez,* 604 F.2d at 102. The insurer was, to be sure, careful in its choice of phraseology. Transamerica was, at best, precise to the point of

pedantry; at worst, vulpine. But in either event, it would be impossible to base a charge of misrepresentation or deceit on any of Transamerica's statements, whether they are viewed singly or in the ensemble. Nothing therein contained could reasonably be said to have thrown Odence "off the trail of any inquiry." *Id.*

Perhaps most significantly, the plaintiff has not shown a scintilla of evidence of the requisite due diligence. Odence had a full three years to ascertain the correct identity of the legal owner of the premises. From aught that appears, not a finger was lifted in this regard. No direct query was made to Ventures or to its insurer. And, this court takes judicial notice, Fed.R.Evid. 201, that the records of land evidence of the city of Pawtucket are public in nature. The most cursory of title searches would indubitably have brought Reed's status *qua* title holder to the surface. Yet, neither the plaintiff nor his counsel embarked upon the most abecedarian of inquiries.

**9.** Odence sued at the stroke of midnight not once, but twice. Virtually simultaneous with

172

When filing this close to the deadline, the margin for error is slight. It is axiomatic that when the margin for error is slight, a slight error can be costly. *Tretter,* 88 F.R.D. at 332.

There was no apparent reason why Odence could not have commenced his action more expeditiously, thereby blunting the very hazard of which he now has run afoul. Had he not dawdled well into the eleventh hour, he would not be caught in the time warp which he now brands as "unfair." His lack of elementary prevenance earns him scant sympathy. The relative equities must, of course, take full account of what is equitable vis-a-vis the defendant. And, Reed is entitled to the legitimate protection afforded by R.I.Gen. Laws, § 9–1–14. When all of the relevant factors are weighed in the balance, and the plaintiff is held to the consequences of his indolence, the scales do not tip unacceptably in the direction of unfairness.

## V. CONCLUSION

The defendant Tyler Reed Company has adequately preserved its limitations defense and has established that the first notice of the institution of the action imputable to it occurred beyond the statutory period. The action prosecuted by the plaintiff against Reed does not relate back to the date upon which the complaint was filed against Salmonson Ventures in this court.

There is no genuine issue as to any material fact. The claim against Reed was not seasonably brought and is foreclosed by operation of R.I.Gen.Laws § 9–1–14. Reed is therefore entitled to judgment as a matter of law. Accordingly, its motion for summary judgment in its favor must be, and hereby is, granted.

*So ordered.*

APPENDIX A
TIME LINE

December 21, 1984
three year
statute of
limitations
expires

| December 21, 1981: cause of action accrues | December 19, 1984: complaint naming Salmonson Ventures filed within applicable three-year statute of limitations | December 28, 1984: service of process effected upon Salmonson Ventures | April 11, 1985: Defendant Salmonson Ventures granted summary judgment | June 6, 1985: leave to amend complaint to add Tyler Reed Company | July 8, 1985: Tyler Reed served with amended complaint |

the commencement of this action, he brought a companion suit in a Massachusetts state court (C.A. No. 20399, Plymouth County Superior Court). The state court action in no way ameliorates Odence's position: there, as here, he sued Ventures, not Reed, and service on Ventures was not effected until December 26, 1984 at the earliest. As noted, the time for bringing suit under the controlling statute, R.I.Gen.Laws § 9–1–14, lapsed on December 20, 1984.