Harold B. HUGHES and Nancy J. Hughes, Plaintiffs-Appellants,

v.

UNITED STATES of America, Defendant-Appellee.

No. 82–1479.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 28, 1982.

Decided Nov. 26, 1982.*

Gerald B. Gallagher, Conklin & Adler, Ltd., Oak Brook, Ill., for plaintiffs-appellants.

Gail C. Ginsberg, Asst. U.S. Atty., Chicago, Ill., Dan K. Webb, U.S. Atty., for defendant-appellee.

Before BAUER and POSNER, Circuit Judges, and WISDOM, Senior Circuit Judge.**

---

* This appeal was originally decided by unreported order on November 26, 1982. See Circuit Rule 35. The Court has subsequently decided to issue the decision as an opinion.

** The Honorable John Minor Wisdom, Senior Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

PER CURIAM.

This action was brought under the Federal Tort Claims Act to recover damages resulting from a "sting" operation dubbed "Son of Abscam" by the press. The plaintiffs' original complaint, filed *pro se*, named the Department of Justice and the Federal Bureau of Investigation as defendants. The amended complaint, filed after the expiration of the statute of limitations, substituted the United States and two others as defendants. Finding the second complaint untimely, the district court granted the government's motion to dismiss. We affirm.

### I.

The underlying controversy in this case concerns an alleged sting operation carried out by Joseph Meltzer with the aid of the F.B.I. According to the allegations of the complaint, Meltzer introduced himself to the plaintiffs, Harold and Nancy Hughes, as the president of Foreign Investment Groups, Ltd., a company he said was owned by a Saudi Arabian sheik. Encouraged by Meltzer's representations, the Hugheses entered into a financing agreement to manufacture and sell cable television equipment. Meltzer required a substantial investment up front, and to induce the plaintiffs to pay this fee he suggested that they verify the legitimacy of his company with the F.B.I. This they did, and satisfied by the F.B.I.'s assurances, the Hugheses invested $10,000 before the sting was uncovered. As a result of the fraud, the plaintiffs assert that they have suffered out-of-pocket losses, lost future income and profits, and loss of esteem in their community.

As required by the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.*, the plaintiffs submitted a claim for $32,754.73 in damages to the F.B.I. The agency referred it to the Department of Justice, which denied the claim on November 14, 1980. The Department informed the Hugheses that they could file suit in a United States district court no later than six months from the date of the letter. Naming the F.B.I. and the Department of Justice as defendants,

the plaintiffs filed their initial complaint on May 13, 1981, and service of process on these agencies occurred 13 days later. After retaining counsel, the plaintiffs filed an amended complaint on August 21, 1981, adding the United States, Joseph Meltzer and the Des Plaines National Bank as defendants. The government moved to dismiss both complaints on the ground that the United States was not named as a party defendant before the expiration of the Federal Tort Claims Act's six-month statute of limitations, and that an amendment of the complaint after the statute had run could not relate back to the date the original complaint was filed. The district court granted the government's motion on February 23, 1982.

The plaintiffs advance two arguments on appeal in support of their contention that the district court erred when it granted the government's motion to dismiss. They maintain, first, that the amended complaint in effect corrected a misnomer in the original complaint, and that such a correction need not meet the requirements set forth in Rule 15(c), Fed.R.Civ.P., for changing a party. Second, the plaintiffs contend that even if the United States is deemed a new party, the amendment related back to the original complaint because Rule 15(c)'s requirement of notice "within the period provided by law for commencing an action" should be construed to include the reasonable time allowed under the Federal Rules for service of process.

### II.

Because the plaintiffs failed to make the United States a party until many months after the Federal Tort Claims Act's six-month statute of limitations had run, the suit against the government could be maintained only if the amended complaint related back to the original complaint. Rule 15(c), Fed.R.Civ.P., provides the standards for determining when an amendment relates back:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction or occurrence set

forth or attempted to be set forth in the original pleading, the amendment related back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing an action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

The plaintiffs first argue that this case does not involve a change in parties but merely a misnomer, analogous to misspelling a name. They find support in a number of cases holding that amendments to correct misnomers need not satisfy the requirements for changing a party set forth in the second sentence of Rule 15(c). *See, e.g., Washington v. T.G. & Y. Stores Co.,* 324 F.Supp. 849, 856 (W.D.La.1971); *Wentz v. Alberto-Culver Co.,* 294 F.Supp. 1327, 1328–29 (D.Mont.1969). The similarity of the names "United States" and "United States Department of Justice", the Hugheses assert, and the fact that throughout the course of the litigation the government has been defended by representatives of the Department of Justice, make this a particularly appropriate case to apply the misnomer exception.

■ The plaintiffs' reliance on the misnomer theory is untenable in this case. When a person or entity sued is changed, a substitution, rather than a correction, has occurred. *Simmons v. Fenton,* 480 F.2d 133, 136 (7th Cir.1973). *See also Stewart v. United States,* 655 F.2d 741, 742 (7th Cir. 1981). Under the Federal Tort Claims Act, a governmental agency cannot be sued in its own name; the action must be brought against the United States. Government agencies do not merge into a monolith; the United States is an altogether different party from either the F.B.I. or the Department of Justice. That the United States Attorney may represent the government does not make the Department of Justice the functional equivalent of the United States. The plaintiffs' amendment substituted a suable entity for non-suable entities after the statute of limitation had barred the action.

### III.

■ The plaintiffs next argue that even if the United States is held to be a new party, their amendment of August 21, 1981, should relate back to May 13, 1981. They say that Rule 15(c)'s requirements have been met: the United States knew, or should have known, that but for a mistake concerning the identity of the proper party, the action would have been brought against it; and the government timely received notice if the Federal Tort Claims Act's statute of limitations is construed to include the reasonable time allowed under the Federal Rules for service of process. Citing *Ingram v. Kumar,* 585 F.2d 566, 571 (2nd Cir.1978), *cert. denied,* 440 U.S. 940, 99 S.Ct. 1289, 59 L.Ed.2d 499 (1979), the Hugheses contend that a literal interpretation of the phrase "within the period provided by law for commencing the action" is unjustified in jurisdictions where timely service of process can be effected after the statute of limitations has run.

We cannot accept the plaintiffs' interpretation of Rule 15(c). In *Stewart v. United States, supra,* 655 F.2d at 742, this Court addressed the identical question we are now asked to review. We held there that relation back requires that *actual* notice be received by the government *within* the six-month limitations period. The Court went on to state:

No notice, formal or informal, occurred during the limitations period here. Having elected to file suit on the last day of the limitations period, plaintiff requests us to add to that period a 'reasonable time' for service of process. We cannot expand the fully adequate six-month period established by Congress.

*Id.*

As in *Stewart,* the plaintiffs in this case waited to file their complaint until the last

day of the limitations period, May 13, 1981, and service of process did not occur until 13 days later. The United States, therefore, did not receive actual notice of the suit within the period. To apply Rule 15(c) to the government in the absence of timely notice would result in prejudice by eliminating the statute of limitations defense. *See United States v. Stewart, supra,* 655 F.2d at 742; *Wood v. Worachek,* 618 F.2d 1225, 1230 (7th Cir.1980). Accordingly, the judgment of the district court, 534 F.Supp. 352, is

AFFIRMED.