Emerson LENOIR, Plaintiff,

v.

FEDERAL DEPOSIT INSURANCE CORPORATION, a corporation by act of the Congress of the United States ("FDIC"); Thomas A. Beshara, Regional Director, FDIC, Chicago, Illinois; Jon J. Will, Associate Director, Division of Liquidation, FDIC, Chicago, Illinois; John A. O'Donnell, Bank Liquidation Specialist in Charge, Consolidated Office of FDIC, OakLawn, Illinois; Gary M. Holloway, Regional Administration, FDIC, Chicago, Illinois; Jack C. Pleasant, Director of Personnel, FDIC, Washington, D.C.; John Rossetti, Supervisory Liquidation Specialist— Investigations, FDIC, Chicago, Illinois; Bruce J. Pederson, Senior Attorney, FDIC Legal Division, Directors and Officers Liability Section, Defendants.

No. 87 C 7927.

United States District Court,
N.D. Illinois, E.D.

March 23, 1989.

Carlton E. Odim, Chicago, Ill., for plaintiff.

Anton R. Valukas, U.S. Atty. and Jeanne M. Witherspoon, Asst. U.S. Atty., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

### I. INTRODUCTION

This is an action brought by Emerson Lenoir, a former employee of the Federal Deposit Insurance Corporation ("FDIC"), to challenge the termination of his employment. After working at the FDIC for approximately two years and one month, plaintiff's employment was terminated on the ground that his involvement in loan transactions at the bank by which he had previously been employed and for which the FDIC had become receiver created a conflict with his position as Liquidation Assistant. Plaintiff's lawsuit is brought against the FDIC and various individual defendants. Count I of his complaint alleges that defendants deprived him of property and liberty without due process of law in violation of the Fifth Amendment to the United States Constitution. Count II alleges that defendants breached plaintiff's employment contract in violation of state law. Count III alleges racial discrimination pursuant to Title VII of the Civil Rights Act of 1964. Before the Court is defendants' motion to dismiss.

### II. SERVICE OF PROCESS

Plaintiff filed his complaint on September 11, 1987. On or about September 18, 1987, he attempted service upon defendants by sending copies of the summonses and complaints by certified mail, together in the same package, to the FDIC's Chicago Regional Office. The individual defendants, with the exception of Jack Pleasant and Bruce Pederson and the possible exception of Gary Holloway, signed and returned notice and acknowledgment forms. On December 1, 1987, during a status hearing, plaintiff's counsel acknowledged that he had not served the United States Attorney for the Northern District of Illinois and the Attorney General of the United States as required by Fed.R.Civ.P. 4(d)(4) and (5). On December 29, 1987, plaintiff personally served the United States Attorney. He

served the Attorney General by mail on December 31, 1987.

The individual defendants contend that the complaint should be dismissed against them because they have not been properly served. With respect to defendants Jack Pleasant and Bruce Pedersen, plaintiff concedes the inadequacy of service, and those two defendants are therefore dismissed from the case. Plaintiff contends that the remaining individual defendants were properly served pursuant to Fed.R.Civ.P. 4(c)(2)(C)(ii), which provides for service "by mailing a copy of the summons and of the complaint (by first-class mail, postage prepaid) to the person to be served, together with two copies of a notice and acknowledgment conforming substantially to form 18–A and a return envelope, postage prepaid, addressed to the sender."

■ Defendants argue that the attempted service did not comply with Rule 4(c)(2)(C)(ii) for three reasons. First, defendants contend that the envelope was not specifically addressed to the individual defendants. Defendants cite no case law or rationale in support of this argument. The Court finds that the failure to specifically address the envelope to the individual defendants does not render the service defective, especially in light of the fact that defendants received actual notice. *Cf. Jaffe v. Federal Reserve Bank of Chicago*, 100 F.R.D. 443, 445 (N.D.Ill.1983) ("When notice is actually given a person, it matters not a whit whether he or she receives it at home, at work, at play or anywhere else.").

■ Second, defendants contend that plaintiff failed to enclose a stamped return envelope as required by Rule 4(c)(2)(C)(ii). The failure to include both the notice and acknowledgment forms and a return envelope is generally held to render service defective. *See, e.g., Norlock v. City of Garland*, 768 F.2d 654, 655–56 (5th Cir. 1985); *Quann v. Whitegate–Edgewater*, 112 F.R.D. 649, 652–53 (D.Md.1986). *But see Kitchens v. Bryan County National Bank*, 825 F.2d 248, 255–56 (10th Cir.1987) (despite omission of return envelope and notice and acknowledgment form, service complied with spirit of Rule 4; federal

courts take a permissive attitude when defendants receive actual notice). However, of these two requirements, inclusion of the notice and acknowledgment is the more important. Where they are submitted and only the return envelope is omitted, service is not considered invalid in the absence of prejudice to the defendants. *See United Services Auto Association v. Cregor*, 617 F.Supp. 1053, 1055 (N.D.Ill.1985).

■ Third, defendants argue that service was defective because it was delivered by certified mail rather than first-class mail. Congress considered an amendment to Rule 4 which would permit service by certified or registered mail, return receipt requested. There was a concern, however, that such a procedure would be inadequate to ensure actual notice. Congress therefore specifically rejected such a procedure, requiring instead the use of first-class mail with an enclosed notice and acknowledgment form and providing that mail service was not complete unless and until that form was signed and returned. *See Bernard v. Strang Air, Inc.*, 109 F.R.D. 336, 337–38 (D.Neb.1985); Fed.R.Civ.P. 4, Original Practice Commentary at C4–19 (reprinted at 28 U.S.C.A. Rule 4, 1988 Supp.). Thus where service is attempted by certified mail, without inclusion of the notice and acknowledgment form, service is improper. *E.g., Bernard*, 109 F.R.D. at 336–37. *See also Chronister v. Sam Tanksley Trucking, Inc.*, 569 F.Supp. 464, 469–70 (N.D.Ill.1983) (service improper where use of certified mail was one of several defects, including failure to enclose proper notice and acknowledgment form). Here, the notice and acknowledgment forms were enclosed and the recipients signed and returned them. In light of the completion of actual notice and the lack of prejudice to defendant from the use of certified rather than first-class mail, the Court finds that the defect is not grounds for dismissal.

With respect to defendant Gary Holloway, plaintiff has not submitted a completed notice and acknowledgment form. It is unclear whether this omission is due to Holloway's failure to return the form or to a clerical error on plaintiff's part. If Hollo-

way did timely execute the form and return it to plaintiff, plaintiff may file the acknowledgment with the Court by April 12, 1989. If no such form is filed, Holloway will be dismissed from the case.[1]

## III. DUE PROCESS CLAIMS

Defendants argue that Count I of the complaint, which alleges deprivation of property and liberty without due process of law, fails to state a claim.[2]

### A. *Property*

 Defendants contend that plaintiff's claim for deprivation of property without due process fails because he did not have a property interest in his continued employment at the FDIC. Plaintiff's position fell in the category of excepted service. *See* 5 U.S.C. §§ 3301–02; 5 C.F.R. § 213. Defendants emphasize that the due process protections afforded to employees in the competitive service do not apply to employees in the excepted service. *See United States v. Fausto,* 484 U.S. 439, 108 S.Ct. 668, 98 L.Ed.2d 830 (1988). Defendants also rely on *Castro v. United States,* 775 F.2d 399, 406 (1st Cir.1985), which held that excepted service employees at the FDIC have no property interest in the renewal of their temporary appointments. Plaintiff distinguishes *Castro* on the ground that he was terminated prior to the expiration of his appointment rather than merely denied a renewal upon the expiration of his appointment. Furthermore, the cases cited by defendants address the issue of whether federal statutes create a property interest for excepted service employees; plaintiff, however, relies not on federal law but on oral "understandings" between himself and defendants to establish a property interest.

A property interest may "be created in one of two ways: (1) 'by an independent

source such as state law securing certain benefits;' or (2) by 'a clearly implied promise of continued employment.'" *Shlay v. Montgomery,* 802 F.2d 918, 921 (7th Cir. 1986), quoting *Munson v. Friske,* 754 F.2d 683, 692 (7th Cir.1985). Plaintiff relies on the second of these two methods. He alleges that there existed an "understanding" between himself and defendants "that he would have an opportunity to address the charges levelled against him." (Complaint, ¶ 17.) *See Davis v. City of Chicago,* 841 F.2d 186, 188 (7th Cir.1988) (property interests may arise from mutually explicit understanding), citing *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972).

However, plaintiff's complaint is insufficient to allege the existence of a property interest because he does not allege facts which would establish that defendants had the authority to enter into such an understanding. As the court recognized in *Fiorentino v. United States,* 607 F.2d 963, 968, 221 Ct.Cl. 545 (1979), *cert. denied,* 444 U.S. 1083, 100 S.Ct. 1039, 62 L.Ed.2d 768 (1980), "[i]f the government were not involved a case of apparent authority might be urged, but with claims against the government, the decisions agree authority must be actual." Thus in *Shlay, supra,* the Seventh Circuit held that an employee of the City of Chicago did not have a property interest in continued employment despite an alleged oral contract for career employment which provided for termination only for cause. The court stated:

[Plaintiff] cites to no source, and we can find none, which purports to give the corporation counsel the authority to create a career position for a person in Shlay's situation. Any promise for such a position would, therefore, be unen-

---

1. Plaintiff argues that defects in service of process should result only in the quashing of process, not dismissal. That is true only where "a reasonable prospect exists that the plaintiff could properly serve the defendant." *Chronister,* 569 F.Supp. at 470. Such a prospect does not exist in this case because the time for service has passed.

2. Defendants initially argue that the complaint does not contain allegations that defendants

were personally involved in the alleged wrongdoing. The complaint does, however, make such allegations. *See, e.g.,* paragraph 16. Many of the paragraphs in the complaint refer to the defendants collectively. Although the complaint may be subject to attack for its lack of specificity, it is not lacking in allegations of personal involvement by the individual defendants.

forceable since it is well-established that a city is generally not legally responsible for acts taken by its officers in excess of their authority. *E.g., Ganley v. City of Chicago*, 18 Ill.App.3d 248, 309 N.E.2d 653, 658 (1st Dist.1974). As the *Ganley* court recognized, "anyone dealing with a governmental body takes the risk of having accurately ascertained that he who purports to act for it stays within the bounds of his authority." *Id. See Chicago Patrolmen's Association v. City of Chicago*, 56 Ill.2d 503, 309 N.E.2d 3, 6, *cert. denied*, 419 U.S. 839, 95 S.Ct. 68, 42 L.Ed.2d 66 (1974).

802 F.2d at 921. *See also Hadley v. County of DuPage*, 715 F.2d 1238 (7th Cir.1983), *cert. denied*, 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984).

Similarly, in *Bollow v. Federal Reserve Bank of San Francisco*, 650 F.2d 1093 (9th Cir.1981), *cert. denied*, 455 U.S. 948, 102 S.Ct. 1449, 71 L.Ed.2d 662 (1982), the court held that a Federal Reserve Bank employee did not have a property interest in continued employment despite an assurance, in a letter to the employee from the Bank president, that the employee would not be terminated so long as his work was satisfactory. The Court stated:

> By promising [the plaintiff] employment security in excess of that provided for by section Four, Fifth [of the Federal Reserve Act of 1913, 12 U.S.C. § 341, Fifth], [the president] clearly overstepped the bounds of his authority under that section. Thus, any contract which might have been created pursuant to the assurance is void and unenforceable against the Bank. "[T]he United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to do what the law does not sanction or permit." *Utah Power and Light Co. v. United States*, 243 U.S. 389, 409, 37 S.Ct. 387, 391 [, 61 L.Ed. 791] (1917).

650 F.2d at 1099 (citations omitted). The court also emphasized that the plaintiff's belief at the time that the president had such authority was irrelevant:

> All persons in the United States are chargeable with knowledge of the Statutes-at-Large. This alone is sufficient for us to assume that [the plaintiff] knew that any property interest which might otherwise have been created by the assurance was negated by section Four, Fifth. In addition, however, it is well established that anyone who deals with the government assumes the risk that the agent acting in the government's behalf has exceeded the bounds of his authority.

*Id.* at 1100 (citations omitted).

Plaintiff in this case has not alleged that defendants had actual authority to enter into an understanding with plaintiff which would result in the creation of a property interest. Furthermore, in light of the statutory and regulatory scheme under which excepted service employees are not given a property interest in continued employment, such an allegation could not survive. Plaintiff's claim of deprivation of property without due process is therefore dismissed with prejudice.

### B. Liberty

■ Only one paragraph in plaintiff's complaint deals directly with the alleged deprivation of his liberty. That paragraph reads as follows: "24. Before and upon the firing of the plaintiff [defendants] disseminated information to third parties concerning the plaintiff's termination from the FDIC, thus causing injury to his good name and reputation." Defendants argue that this conclusory allegation is insufficient to plead a civil rights claim. Defendants rely on *Cohen v. Illinois Institute of Technology*, 581 F.2d 658, 663 (7th Cir. 1978), *cert. denied*, 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979), in which the court affirmed the denial of leave to amend a sex discrimination complaint because the proposed amendments would not cure the complaint's defects. The court stated that "a pleading is insufficient to state a claim under the Civil Rights Act if the allegations are mere conclusions. Some particularized facts demonstrating a constitutional deprivation are needed to sustain a cause

of action under the Civil Rights Act." 581 F.2d at 663 (citations omitted).

■ The principle that specific allegations must be made to support a civil rights claim was applied to an allegation similar to plaintiff's in *Pike v. City of Mission, Kansas,* 731 F.2d 655, 661 (10th Cir.1984):

> The complaint does contain the broad conclusory allegation that all defendants continue to damage Pike's reputation by "representing to third persons and to the public that the fault claimed and defamatory statements made against Plaintiff were true." However, this allegation is inadequate under Fed.R.Civ.P. 8(a)(2) because it pleads insufficient facts concerning time, place, actors, or conduct to enable defendants to respond.

As in *Pike,* the plaintiff here has pled insufficient facts to support a claim for deprivation of liberty without due process of law. Because plaintiff may be able to cure this defect, this claim is dismissed without prejudice.[3]

## IV. BREACH OF CONTRACT

Defendants argue that plaintiff's breach of contract claim (Count II) must be dismissed because, as a federal employee, his employment rights are determined by references to statutes and regulations rather than common law contract principles. *See McCauley v. Thygerson,* 732 F.2d 978 (D.C. Cir.1984); *Kizas v. Webster,* 707 F.2d 524, 535 (D.C.Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984); *Riplinger v. United States,* 695 F.2d 1163, 1164 (9th Cir.1983). Plaintiff chose not to respond to this argument and Count II is therefore dismissed with prejudice.

## V. TITLE VII

■ Finally, defendants argue that the Court lacks subject matter jurisdiction over plaintiff's Title VII claim (Count III). Section 717 of Title VII, 42 U.S.C. § 2000e–16(c), requires a plaintiff who sues the government for an alleged Title VII violation to file suit against the head of the department, agency or unit within thirty days of receipt of notice of final agency action. Plaintiff concedes that he failed to file suit against L. William Seidman, Chairman of the FDIC, within the requisite time period, and that the complaint is therefore defective. *See Ellis v. United States Postal Service,* 784 F.2d 835, 838 (7th Cir.1986). However, plaintiff seeks leave to amend his complaint to cure this defect pursuant to Fed.R.Civ.P. 15(c), which provides in part:

> An amendment changing the party against whom a claim is asserted relates back if ... within the period provided by law for commencing the action against the party to be brought in by amendment that party (1) has received such notice of the action that the party will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.[4]

Defendants contend that Rule 15(c) does not apply because, where Title VII is involved, Rule 15(c) requires receipt of actual notice by the agency head within the time period. Plaintiff argues that constructive notice is sufficient and that Chairman Seidman had timely constructive notice. This alleged constructive notice stems from Seidman's knowledge of the administrative proceedings which preceded plaintiff's law-

---

**3.** Defendants also argue that plaintiff's Fifth Amendment claim is barred because it rests on the same factual predicate as his Title VII claim, *i.e.,* discrimination on the basis of race. Defendants assert that Title VII provides the exclusive remedy for such a claim, citing *Brown v. General Services Administration,* 425 U.S. 820, 829, 96 S.Ct. 1961, 1966, 48 L.Ed.2d 402 (1976). The Court rejects defendants' argument because plaintiff's Fifth Amendment claim, although related to his race discrimination claim, asserts an entirely different claim of due process viola-

tions which need not include the element of race discrimination to survive.

**4.** Rule 15(c) also provides that requirements (1) and (2) are met by service of process on the United States Attorney or the Attorney General of the United States. This provision does not help plaintiff because, although he effected such service, he did so by mail on December 31, 1987, after the expiration of the thirty-day period which began upon his receipt of notice on August 14, 1987.

suit, from the fact that FDIC employees knew of the lawsuit, and from the fact that Seidman would be represented by the same government attorneys who are defending this lawsuit.

The Court is not without sympathy for plaintiff's position. Unfortunately for plaintiff, the case law is clear that Title VII and Rule 15(c) must be read strictly. Thus in *Stewart v. United States*, 655 F.2d 741 (7th Cir.1981), the plaintiff erroneously sued the Postal Service and an employee thereof under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2401, when he should have sued the United States. The court affirmed the dismissal of the case, stating that Rule 15(c) requires "that actual notice be received by the Government" within the requisite time period and that "[n]o notice, formal or informal, occurred during the limitations period here." 655 F.2d at 742. The court noted that the "[p]laintiff's remedy is a malpractice lawsuit." *Id.* Similarly, in *Hughes v. United States*, 701 F.2d 56 (7th Cir.1982), the court affirmed the dismissal of an FTCA lawsuit brought against the "United States Department of Justice" rather than the United States. The court stated:

> Government agencies do not merge into a monolith; the United States is an altogether different party from either the F.B.I. or the Department of Justice. That the United States attorney may represent the government does not make the Department of Justice the functional equivalent of the United States.

701 F.2d at 58. The court held that Rule 15(c) did not apply because the original notice to the named defendant was not timely. *Id.*

In *Cooper v. United States*, 740 F.2d 714 (9th Cir.1984), *cert. denied*, 471 U.S. 1022, 105 S.Ct. 2034, 85 L.Ed.2d 316 (1985), the court affirmed the dismissal for lack of jurisdiction of a Title VII case in which the plaintiff had named as the defendant the Postal Service rather than the Postmaster General. The court, in applying Rule 15(c), followed the strict notice requirement used by the Seventh Circuit. 740 F.2d at 716. The court seemed to leave open the possi-

bility that "informal notice" would have sufficed, holding that the Postal Service's participation in administrative proceedings did not constitute adequate notice. *Id.* at 717.

In *Hale v. United States Postal Service*, 663 F.Supp. 7 (N.D.Ill.1986), *aff'd without opinion*, 826 F.2d 1067 (7th Cir.1986), the court dismissed a Title VII case brought against the Postal Service rather than the Postmaster General. The court held that Rule 15(c) did not apply because the Postmaster General had not received notice within the thirty-day time period. 663 F.Supp. at 9.

In *Portis v. Department of the Army*, 117 F.R.D. 579 (E.D.Va.1987), the court denied a motion to file an amended complaint where the plaintiff improperly sued the Army rather than the Secretary of the Army. The court held that Rule 15(c) did not apply because the Secretary had not received timely notice. 117 F.R.D. at 580–81.

If the only defect in this case were plaintiff's error in suing the FDIC rather than Seidman, the Court would be inclined to apply Rule 15(c). In *Warren v. Department of the Army*, 867 F.2d 1156 (8th Cir.1989), the court allowed a Title VII plaintiff to amend his complaint pursuant to Rule 15(c) even though he had named as the defendant the Department of the Army rather than the Secretary of the Army. The Court reasoned:

> "Given the substantial identity of interest existing between the Department of the Army and its Secretary, notice of Warren's action may be properly imputed to the Secretary. We have little doubt but that the same individual would have received Warren's suit papers regardless of whether the Department or its Secretary were named as defendant."

(At 1161.) *See also Stewart, supra,* 655 F.2d at 742 (stating that no "formal *or informal*" notice had been given) (emphasis added). In this case as well, notice of the suit received by the FDIC could perhaps be imputed to Seidman. However, the misnomer of defendants is not the only defect. Application of Rule 15(c) would be

improper because even the notice given to the FDIC employees was effected after the thirty-day period. Plaintiff received the final FDIC agency decision on August 14, 1987. He served the summons and complaint on the FDIC "on or about September 18, 1987," according to defendants. The notice and acknowledgment of service forms indicate that they were mailed on September 16, 1987. They were signed by their recipients between October 19 and October 29, 1987. Even if the Court uses the September 16 mailing date as the date of notice, formal notice to the FDIC was not afforded within the thirty-day period. Furthermore, the other facts on which plaintiff relies to establish imputed notice, such as Seidman's knowledge of administrative proceedings, are not sufficient to meet the requirements of Rule 15(c). *See Cooper,* 740 F.2d at 717.

Thus the Court finds that dismissal of Count III is mandated by the strict reading which must be afforded to Rule 15(c). As the Supreme Court stated in *Schiavone v. Fortune,* 477 U.S. 21, 30–31, 106 S.Ct. 2379, 2385, 91 L.Ed.2d 18 (1986):

> We do not have before us a choice between a "liberal" approach toward Rule 15(c), on the one hand, and a "technical" interpretation of the Rule, on the other hand. The choice, instead, is between recognizing or ignoring what the rule provides in plain language. ... The linchpin is notice, and notice within the limitation period. Of course, there is an element of arbitrariness here, but that is a characteristic of any limitation period. And it is an arbitrariness imposed by the legislative and not by the judicial process.

Similarly, in *Hale,* the court recognized that strict application of the rules may seem harsh but stated that "such harsh results in individual cases may be the inevitable corollary of the 'court's obligation in all cases to follow precedent and to implement controlling statutes and procedural rules.' ... [W]hatever hardships these combined provisions work on Title VII plaintiffs can be alleviated only by Congress and the drafters of the Federal Rules

of Civil Procedure." 663 F.Supp. at 9, quoting *Cooper, supra,* 740 F.2d at 717.

## VI. CONCLUSION

All counts of plaintiff's complaint are dismissed with prejudice as to defendants Jack Pleasant and Bruce Pedersen. All counts will be dismissed as to Gary Holloway unless plaintiff files an executed notice and acknowledgment form by April 12, 1989. With respect to all defendants, Count I is dismissed with prejudice as to the deprivation of property claim and without prejudice as to the deprivation of liberty claim. Counts II and III are dismissed with prejudice.