MARSTON GUESE, Plaintiff and Counterdefendant-Appellant, v. FARMERS INTER-INSURANCE EXCHANGE, Defendant and Counter-plaintiff-Appellee.

First District (4th Division)   No. 1—91—3848

Opinion filed October 29, 1992.

Raymond P. Carroll, of Chicago, for appellant.

Querrey & Harrow, Ltd., of Chicago, for appellee.

JUSTICE McMORROW delivered the opinion of the court:

Marston Guese (Guese) was injured in an automobile accident resulting from the alleged negligence of Joseph Bluver (Bluver). Following settlement negotiations, Guese executed a general release in

favor of Bluver for the remaining limits on Bluver's automobile insurance policy. Thereafter, Guese filed an action to compel his own insurer, Farmers Inter-Insurance Exchange (Farmers), to arbitrate his right to underinsured insurance proceeds in a policy issued by Farmers. Farmers filed an answer and cross-complaint seeking a declaratory judgment that it had no duty to provide underinsured coverage to Guese. Farmers claimed that it had no obligation to provide such coverage because Guese had not obtained Farmers' prior consent to the general release Guese had executed in favor of the tort-feasor, Bluver. The trial court entered summary judgment in favor of Farmers, and Guese appeals.

Upon review, we determine that the record does not establish, as a matter of law, that Farmers' subrogation rights were prejudiced by Guese's execution of the general release in favor of Bluver. As a result, we reverse and remand.

The pertinent facts of record in this appeal are as follows. On June 17, 1988, Guese was injured while he was a passenger in an automobile owned and operated by Bluver. At the time of the accident, Bluver had an automobile insurance policy with Worldwide Insurance Company (Worldwide) that provided limits of coverage at $50,000 per person and $100,000 per occurrence. Guese filed a claim with Worldwide seeking compensation for the injuries Guese had sustained in the Bluver auto accident.

At the time of the incident, Guese was an additional insured on an automobile insurance policy issued by Farmers to Guese's spouse. On September 28, 1988, Guese's attorney sent Farmers a letter advising Farmers of Bluver's insurance policy with Worldwide and the terms of that insurance coverage. The letter also advised Farmers of settlements that had already been made by Worldwide under the policy to others injured in the accident. In addition, the correspondence stated that Guese had suffered serious injuries from the incident and would probably require future medical treatment. The letter stated that it was "with these facts in mind that we are formally advising you that we intend to present a claim for Underinsured Motorist coverage upon resolution of matters pending with the insurance carrier for the driver responsible for [Guese's] injuries." The correspondence noted that "there are limits of $250,000 per person and $500,000 occurrence provided to [Guese] under the terms of your policy and [we] would appreciate your contacting this office upon receipt of this correspondence." Farmers did not respond to this letter from Guese's counsel.

On April 27, 1989, Guese's attorney sent a letter to Bluver's insurer, Worldwide, demanding the balance available under the insurer's

policy with Bluver. In this correspondence, Guese's counsel responded to Worldwide's representations that it questioned the nature and extent of Guese's injuries. In this regard, the letter specified the various medical treatments Guese had required to date. Guese's counsel advised Worldwide that it had already been sent the pertinent documents to substantiate that these treatments had been required. The attorney also stated that Worldwide was "aware that [Guese's] acceptance of any sum less than the amount available on Mr. Bluver's policy will preclude [Guese's] pursuit of an underinsured motorist case against his own carrier." The correspondence demanded that Worldwide settle the cause for the limits remaining on its insurance policy with Bluver.

Following the receipt of this correspondence, Worldwide agreed to pay Guese the outstanding balance on its insurance policy issued to Bluver. On approximately May 22, 1989, Guese executed a general release discharging Bluver from any liability for Guese's injuries, in exchange for the sum of $43,500. It is undisputed that this amount was the balance available under the insurance coverage provided by Bluver's insurer, Worldwide, because of previous settlements paid by the insurer to others also injured in the accident.

Guese then applied to Farmers for underinsured insurance coverage pursuant to the policy Farmers had issued to Guese's spouse. The record reveals that Farmers' insurance policy covering Guese stated that Farmers would provide uninsured motorist coverage only after exhaustion of the limits of liability under any other applicable bodily injury liability insurance policy. Farmers' policy also provided that uninsured motorist coverage did not apply to a bodily injury sustained by an insured if the insured made any settlement without Farmers' written consent. In addition, Farmers' policy preserved its subrogations rights in the event that Farmers made any payment under its policy, and obligated the insured to "sign and deliver to [Farmers] any legal papers relating to that recovery [from another], do whatever else is necessary to help [Farmers] exercise [its subrogation] rights and do nothing after loss to prejudice [Farmers' subrogation] rights."

It is undisputed that Guese did not formally notify his insurer, Farmers, of the settlement offer made by Worldwide on Bluver's behalf. It is also undisputed that Guese did not formally advise Farmers of his intention to execute the general release in favor of Bluver in exchange for settlement in the amount of $43,500. Because it had not consented to the settlement, Farmers refused to consider Guese's claim for underinsured motorist coverage and declined to submit the matter to arbitration.

Guese then filed an action in the circuit court of Cook County to compel Farmers' arbitration of Guese's claim. Farmers filed an answer to Guese's complaint and also filed a countercomplaint against Guese. In its countercomplaint, Farmers alleged that it was not obligated to provide underinsured coverage to Guese, because Guese had not obtained Farmers' consent to his settlement of his claims with Bluver and Bluver's insurer, Worldwide. Guese filed an answer to Farmers' cross-complaint in which Guese alleged *inter alia* that Farmers had not been prejudiced by the general release because Bluver and Worldwide were aware of Guese's intent to pursue underinsured motorist coverage from Farmers upon execution of the release. Both Guese and Farmers filed motions for summary judgment with regard to their respective positions. Following briefing and argument, the trial court entered summary judgment in favor of Farmers and against Guese. This appeal followed.

■ Upon review, Farmers argues that summary judgment was properly entered in its favor because Guese did not obtain Farmers' consent to his settlement with Bluver. In this regard, Farmers relies upon section 143a—2 of the Illinois Insurance Code (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2), which provides:

"Subrogation against underinsured motorists. No insurer shall exercise any right of subrogation under a policy providing additional uninsured motorist coverage against an underinsured motorist where the insurer has been provided with written notice in advance of a settlement between its insured and the underinsured motorist and the insurer fails to advance a payment to the insured, in an amount equal to the tentative settlement, within 30 days following receipt of such notice." Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(7).

Farmers claims that because it was not notified of Guese's intent to settle with Bluver, Farmers was deprived of the opportunity to advance the sum tentatively offered by Bluver and his insurer, Worldwide. Farmers argues that because it could not make such an advance, it cannot now seek subrogation from Bluver in the event that Farmers pays Guese under its underinsured motorist provision.

In our view, Farmers' argument misconstrues the plain terms of section 143a—2(7). The section specifically applies where the "insurer has been provided with written notice in advance of a settlement between its insured and the underinsured motorist." (Ill. Rev. Stat. 1989, ch. 73, par. 755a—2(7).) The purpose of this section is to impose an additional burden on an insurer's preservation of its subrogation rights, by requiring that the insurer match any settlement offer ten-

dered by the underinsured motorist when the insurer has been provided with advance written notice of the settlement offer. (See *Boyd v. Madison Mutual Insurance Co.* (1987), 116 Ill. 2d 305, 310, 507 N.E.2d 855.) Since it appears that Farmers did not formally receive such advance written notice, the section would not apply to Farmers and would not terminate Farmers' subrogation rights as against Bluver.

■ Farmers also contends that its subrogation rights were prejudiced by Guese's execution of the general release in favor of Bluver, because the record does not demonstrate that Bluver's insurer, Worldwide, had knowledge of Farmers' subrogation rights when the release was executed. As Farmers acknowledges, a general release executed by an insured injured party does not extinguish the subrogation rights of the injured party's insurer, where the tort-feasor or the tort-feasor's insurer had knowledge of the subrogation rights of the injured party's insurer. See *Home Insurance Co. v. Hertz Corp.* (1978), 71 Ill. 2d 210, 375 N.E.2d 115; *International Union of Operating Engineers Local 841 Health & Welfare Fund v. Hickman* (1989), 190 Ill. App. 3d 658, 663, 546 N.E.2d 1056; *Mulholland v. State Farm Mutual Automobile Insurance Co.* (1988), 171 Ill. App. 3d 600, 527 N.E.2d 29; *Gattorna v. American States Insurance Co.* (1984), 122 Ill. App. 3d 582, 589, 461 N.E.2d 675.

Farmers argues that the correspondence from Guese's counsel to Worldwide, in which it was stated that Worldwide "was aware that [Guese's] acceptance of any sum less than the amount available on Mr. Bluver's policy will preclude [Guese's] pursuit of an underinsured motorist case against his own carrier," was insufficient to place Worldwide on notice of the subrogation rights of Farmers as Guese's insurer. We find this argument insufficient basis to sustain the trial court's entry of summary judgment in favor of Farmers.

■ In our opinion, reasonable minds could differ with respect to the interpretation to be accorded to this letter from Guese's counsel to Bluver's insurer, Worldwide. (See *Mulholland*, 171 Ill. App. 3d at 606-07 (letter from injured party's counsel to tort-feasor's insurer, including copy of injured party's automobile insurance policy, sufficient to place tort-feasor's insurer on notice of subrogation rights of injured party's insurer).) In addition, we note that Farmers has provided no evidence with regard to whether Bluver had knowledge of Farmers' subrogation rights. On a motion for summary judgment, it is the movant's burden to present matters demonstrating that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. (See Ill. Rev. Stat. 1991, ch. 110, par.

2—1005.) Consequently, it was Farmers' burden to provide matters in support of its motion for summary judgment showing, as a matter of law, that Worldwide or Bluver did not have knowledge of Farmers' subrogation rights. As the court noted in *Gattorna v. American States Insurance Co.* (1984), 122 Ill. App. 3d 582, 461 N.E.2d 675:

> "Since the instant defendant [insurer] did not attach any matters to its motion [for summary judgment] which bore on the key issue of the tortfeasor's knowledge, the trial court was not in a position to resolve *** the question of whether the defendant's subrogation rights were actually prejudiced by the settlement. Since a question of fact remained on the issue of prejudice to those rights, the award of summary judgment cannot be sustained on the basis of plaintiff's alleged violation of the subrogation clause. See *Marsh v. Prestige Insurance Group* (1978), 58 Ill. App. 3d 894." *Gattorna*, 122 Ill. App. 3d at 589.

Similarly, in the case at bar, Farmers did not include in its motion for summary judgment any evidence to establish that Worldwide and Bluver did not have knowledge of Farmers' subrogation rights. As a result, a question of fact remains as to this issue, and the award of summary judgment in favor of Farmers was in error. The decision of *Standard Mutual Insurance Co. v. Petreikis* (1989), 183 Ill. App. 3d 272, 538 N.E.2d 1327, is factually inapposite to the instant cause, as the *Petreikis* court did not consider the question of whether the tortfeasor or his insurer had knowledge of the subrogation rights of the injured party's insurer. The decision of *Farmers Automobile Insurance Association v. Suligoy* (1989), 180 Ill. App. 3d 896, 536 N.E.2d 1003, is also distinguishable, as the injured party in that case did not make a timely allegation that the tort-feasor or his insurer had knowledge of the subrogation rights of the injured party's insurer. In the instant cause, Guese made allegations to show such knowledge on the part of Bluver and his insurer, Worldwide, and came forward with correspondence in support of his allegations.

For the reasons stated, the judgment of the circuit court of Cook County is reversed, and the cause remanded for further proceedings consistent herewith.

Reversed and remanded.

JIGANTI, P.J., and LINN, J., concur.