**NATIONWIDE INSURANCE COMPANY a Subrogee of Mary Ann Skrobicki, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 96 C 7013.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 26, 2000.

Robert A. Townsend, Guest, Walsh & Townsend, Chicago, IL, for plaintiff.

Sherri Thornton, Assistant United States Attorney, Chicago, IL, for defendant.

### MEMORANDUM OPINION AND ORDER

KEYS, United States Magistrate Judge.

This matter is before the Court on Plaintiff's Motion for Summary Judgment, and Defendant's Cross Motion for Summary Judgment, pursuant to Federal Rule of Civil Procedure 56. Plaintiff, Nationwide Insurance Company ("Nationwide"), maintains that Defendant, the United States of America, failed to protect Nationwide's subrogation claim for $31,360.97 in medical benefits paid to Nationwide's insured, Mary Ann Skrobicki ("Ms. Skrobicki"), arising out of an automobile accident between Ms. Skrobicki and an officer of the United States Navy. Defendant claims that the Court does not have jurisdiction under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) & 2671–2680 (West 2000), to adjudicate this case, and furthermore, that Defendant United States did not receive adequate notice of Nationwide's subrogation interest before it entered into a release and indemnity agreement with the insured, Ms. Skrobicki. For the reasons set forth below, the Court grants Plaintiff's Motion for Summary Judgment, and, therefore, denies Defendant's Cross Motion for Summary Judgment.

### Procedural History

On October 19, 1993, naval officer David Neff ("Mr.Neff"), while driving a United States Government vehicle, collided with an automobile driven by Ms. Skrobicki. (Complaint at Law ["Complaint"] ¶ 3.) On and prior to October 19, 1993, Nationwide insured Ms. Skrobicki under automobile insurance policy number 91C 312–625. (Complaint ¶ 2.[1]) As a result of the auto-

---

1. Plaintiff's Memorandum in Support of its Motion for Summary Judgment ("Pl.'s Memo.") states that the date of the accident was on October 13, 1993. Plaintiff's Complaint at Law, however, states that the date of the accident was on October 19, 1993. The

mobile accident, Nationwide paid a total of $31,360.97 in medical and personal injury benefits to or on behalf of Ms. Skrobicki. (Complaint ¶ 4.)

Ms. Skrobicki filed suit in United States District Court for the Northern District of Illinois, case number 94 C 50330, against the United States of America, the Department of the Navy and David Neff, seeking damages for her injuries. (Complaint ¶ 6; Pl.'s Memo. at 3.[2]) On or about October 18, 1995, Defendant United States agreed to pay Ms. Skrobicki a lump sum of $200,000.00 in consideration for Ms. Skrobicki's release and discharge of the United States and its agents from all causes of action giving rise to the litigation set forth in Ms. Skrobicki's initial complaint. (Complaint ¶ 6; Pl.'s Memo. at Exhibit B, ¶¶ 1–2.)

On November 7, 1996, Nationwide filed the present suit against the United States and the Department of the Navy, alleging that Defendants breached Nationwide's valid subrogation lien for the amount of $31,360.97. (Complaint.) Defendants filed a motion to dismiss, claiming that the Court did not have subject matter jurisdiction under the FTCA. (Defendants' Memorandum In Support Of Their Rule 12(B)(1) Motion To Dismiss For Lack Of Subject Matter Jurisdiction ["Def's Mot. To Dismiss"] at 1–2.) Judge Blanche Manning granted Defendants' Motion to Dismiss as to Defendant Navy, holding that under the FTCA "the only proper defendant to a suit is the United States and not its constituent agencies." (Judge Manning's Order ["Order"] at 2, citing *Hughes v. United States*, 701 F.2d 56, 58 (7th Cir.1982).) Judge Manning denied the Motion to Dismiss as to Defendant United States, however, holding that under *Home Insurance Co. v. Hertz Corp.*, 71 Ill.2d 210, 16 Ill.Dec. 484, 375 N.E.2d 115 (1978), an insurer may recover damages from the tort-feasor, if the tort-feasor had knowledge of the insurer's subrogation interest prior to signing a release with the insured. (Order at 2.) Consequently, the present dispute before the Court involves the parties Nationwide and the United States—not the Department of the Navy.

### Factual Background

The crux of this case is whether Defendant United States had knowledge of Nationwide's subrogation interest before the United States signed a release and indemnity agreement with the insured, Ms. Skrobicki. Plaintiff Nationwide insured Ms. Skrobicki on and before October 19, 1993, under policy number 91C–312625, providing personal injury protection coverage and benefits for bodily injury resulting from an accident arising out of the use of a motor vehicle. (Complaint ¶ 2.) Nationwide's Insurance policy further provided that it would have full rights of subrogation against any third parties responsible for the accident. (*Id.*)

Nationwide informed the Department of the Navy on at least three occasions of its subrogation interest. First, on January 26, 1994, Nationwide, through its claim representative, Virgil Hollingsworth, ("Mr.Hollingsworth"), notified the Department of the Navy by letter of Nationwide's subrogation claim pertaining to the automobile accident of October 19, 1993 between Ms. Skrobicki and Mr. Neff. (Pl.'s Memo. at Exhibit C.) On July 20, 1994, Lieutenant M.J. Lawrence–Dula, of the United States Navy, sent a letter to Plaintiff, acknowledging Plaintiff's interest regarding the accident. (Pl.'s Memo. at Exhibit D.) On July 27, 1994, Mr. Hollingsworth sent another letter to Lt. Lawrence–Dula, notifying him that Plaintiff had paid medical benefits and lost wages to Ms. Skrobicki under her Personal Auto

Court assumes this six day discrepancy is a typographical error and that the correct date is October 19, 1993.

**2.** Plaintiff's Statement of Material Facts pursuant to local rule 56.1 is incorporated in Plaintiff's Memorandum in Support of its Motion for Summary Judgment ("Pl.'s Memo".) and is not a separate document. Accordingly, facts from Plaintiff's 56.1 statement relied on in this opinion may be found in Pl.'s Memo.

policy, and that Ms. Skrobicki had retained an attorney and was seeking action against Mr. Neff and/or the owner of the automobile. (Pl.'s Memo. at Exhibit E.) Significantly, Mr. Hollingsworth's second letter stated as follows: "I ask that you allow this letter to serve as our notice of subrogation and that you protect our rights with regard to subrogation interests." (*Id.*) Finally, on October 12, 1994, Mr. Hollingsworth again notified the Department of the Navy of Nationwide's interest in seeking reimbursement of all moneys paid under Ms. Skrobicki's Auto policy: "Please be advised, that we will seek full reimbursement from you for all moneys paid under our insured's Auto policy, resulting from this incident." (Pl.'s Memo. at Exhibit F.) On November 8, 1994, Lt. Lawrence–Dula sent correspondence to Nationwide acknowledging Nationwide's interest regarding the automobile accident: "This will again acknowledge your interest regarding the above-captioned incident." (Pl.'s Memo. at Exhibit G.)

Although Nationwide had informed the Department of the Navy of its subrogation interest on several occasions, it did not similarly inform the United States. In July of 1994, Nationwide became aware that its insured, Ms. Skrobicki, filed suit against the United States, regarding the automobile accident that had occurred on October 19, 1993. Nationwide admits that it did not then inform the United States of its subrogation interest. (Plaintiff's Response To Defendant's Additional Statements Of Material Facts In Support Of Cross–Motion For Summary Judgment ("Pl.'s Res. To Def. Add. Statement") ¶¶ 15,16.) On April 26, 1996, Lieutenant K.J. Powers, from the Department of the Navy, sent correspondence to Plaintiff stating that Ms. Skrobicki's personal injury claim against the United States had been settled, and that Ms. Skrobicki had signed a stipulation barring any action that she, or her heirs, executor, administrators, or assigns may have against the United States of America. (Pl.'s Memo. at Exhib-

it H.) Accordingly, the Department of the Navy denied Plaintiff's subrogation claim.

Plaintiff presently seeks to recover from Defendant the $31,360.97 it paid on behalf of Ms. Skrobicki. According to the FTCA, which is discussed in more detail below, Plaintiff may not sue the Department of the Navy directly, but may only sue the United States government for the $31,360.97 it paid on behalf of its insured. Defendant claims, however, that it did not have knowledge of Plaintiff's subrogation interest before it signed the release and indemnity agreement with the insured, and therefore is not obligated to pay Plaintiff anything.

There are no material facts in dispute, and both Plaintiff and Defendant have moved for summary judgment. Both Plaintiff and Defendant agree that the Department of the Navy had notice of Plaintiff's subrogation claim, but that the Plaintiff did not directly inform the Defendant of its subrogation claim. (Pl.'s Res. To Def. Add. Statement, ¶ 16.) The pivotal question posed by this case is whether notice to the Department of the Navy of Plaintiff's subrogation claim may be imputed to the United States.

### SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden of showing that the record contains no genuine issue of fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to show, through specific facts in the record, that there is "a genuine issue for trial." *Id.* at 324, 106 S.Ct. 2548. The Court examines the record in a light most favorable to the non-movant, but conclusory allegations without evidentiary support will not suffice. *Miller v. Borden, Inc.,* 168 F.3d 308, 312 (7th Cir.1999). In this case, both parties have moved for sum-

mary judgment and agree that there are no material facts in dispute.

## ANALYSIS

As a threshold matter, Defendant asserts that, under the FTCA, the Court does not have jurisdiction to adjudicate this case because it arises out of a contract and not tort. (Memorandum in Support of Defendant's Cross Motion for Summary Judgment and in Opposition to Plaintiff's Motion for Summary Judgment ["Def.'s Cross Mot."] at 4.) Assuming the Court finds jurisdiction, Defendant then argues that it did not have notice of Plaintiff's subrogation interest before it signed a release and indemnity agreement with the insured. (*Id.* at 5–6.) For the following reasons, the Court rejects both of Defendant's arguments.

### A. *Jurisdiction*

■ Defendant maintains that this case arises out of a contract, in the form of a dispute concerning the terms of a settlement agreement. Therefore, according to Defendant, the sole waiver of sovereign immunity lies in the Contract Disputes Act ("CDA"), 41 U.S.C. § 601 *et seq.* (West 2000), and not the Federal Tort Claims Act. Essentially, the issue raised by Defendant is whether the current controversy is more akin to a contract claim or tort claim. By reading the CDA and the FTCA, it is clear that the present controversy is appropriately brought under the FTCA.

The FTCA grants a limited waiver of sovereign immunity for the United States in tort actions. *Midwest Knitting Mills, Inc. v. United States,* 950 F.2d 1295, 1296–1297 (7th Cir.1991). Under the FTCA, "... federal district courts 'shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages, ... for injury or loss of property or death caused by the negligent or

wrongful act or omission of any employee of the Government....'" *Id.* at 1296–1297 (quoting 28 U.S.C. §§ 1346(b) & 2671–2680).

The CDA, by contrast, waives sovereign immunity for contract disputes with the government, and gives the Court of Federal Claims exclusive jurisdiction over such actions. *See* 41 U.S.C. § 609(a). First and foremost, the CDA is a statutory scheme for resolution of contractual disputes between the United States and government contractors. *See* 41 U.S.C. § 602(a).[3] Furthermore, under the CDA, there needs to be a contract which is the subject of the dispute. *Id.*

The case *sub judice* concerns subrogation in an underlying tort action—not a contractual dispute between Plaintiff insurer and Defendant United States. Indeed, there is no dispute over the terms of the release and indemnity agreement, and moreover, Plaintiff never entered into a contract with Defendant. The cases cited by Defendant, such as *Up State Federal Credit Union v. Walker,* 198 F.3d 372 (2nd Cir.1999), concern disputes over written instruments and are, therefore, inapposite. The case *sub judice* is simply not arising from a contract, but rather from an underlying tort.

### B. *Knowledge of Subrogation Interest*

Defendant's next argument is that the United States did not have knowledge of the subrogation interest before entering into the indemnity and release with the insured. The Seventh Circuit held in *Midwest, supra,* that the FTCA waives sovereign immunity and grants jurisdiction to the federal district court "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

---

**3.** The CDA provides, in pertinent part, that it applies to any express or implied contract ... entered into by an executive agency for—
  (1) the procurement of property, other than real property in being;
  (2) the procurement of services;
  (3) the procurement of construction, alteration, repair or maintenance of real property; or
  (4) the disposal of personal property. 41 U.S.C. § 602(a).

*Midwest,* 950 F.2d at 1297. In the case *sub judice,* the automobile accident occurred in Lake In The Hills, Illinois. Accordingly, the Court will rely upon Illinois law when determining the outcome.

Illinois case law has held that "a person who, pursuant to a legal liability, has paid for a loss or injury resulting from the negligence or wrongful act of another will be subrogated to the rights of the injured person against such a wrongdoer ... Thus, it is commonly stated that the subrogee [Nationwide] must step into the shoes of or be substituted for the subrogor [insured]." *Reich v. Tharp,* 167 Ill.App.3d 496, 118 Ill.Dec. 248, 521 N.E.2d 530, 533 (5th Dist.1988). In other words, the subrogee-insurer has a tort claim against the third-party, if the subrogor-insured has a tort claim against the third-party. In this case, Ms. Skrobicki (*e.g.* subrogor-insured) had a tort claim against the United States (*e.g.* third-party) because she was injured in an automobile collision by a government employee. Accordingly, Nationwide (*e.g.* subrogee-insurer) substitutes for Ms. Skrobicki, and has a tort claim against the United States.

■ Illinois law has also held on numerous occasions that an unlimited release executed by the insured, for consideration not specifically including an amount designated as covering the insurer's subrogation interest, does not bar a subsequent subrogation action by an insurer, if the tortfeasor had knowledge of the insurer's subrogation interest prior to signing the release. *Home Insurance v. Hertz,* 71 Ill.2d 210, 16 Ill.Dec. 484, 375 N.E.2d 115, 118 (1978); *see also Guese v. Farmers Inter–Insurance Exchange,* 238 Ill.App.3d 196, 179 Ill.Dec. 383, 606 N.E.2d 215, 218 (1st Dist.1992) (listing cases).

■ In the case *sub judice,* it is undisputed that Plaintiff sent numerous letters to the Department of the Navy indicating its subrogation interest. According to the FTCA, a tort claim against the United States is forever barred unless it is (1) first presented in writing to the appropriate federal agency within two years of accrual of the cause of action, or (2) brought in court within six months following denial by the agency. *See* 28 U.S.C. § 2401(b). Here, Nationwide notified the appropriate federal agency, the Department of the Navy, of its administrative claim and subrogation interest well within the two years of accrual of the cause of action, and when its claim was subsequently denied by the agency, it sued the United States in federal court.

Defendant correctly asserts that, under the FTCA, the United States is the appropriate party to be sued in federal court, and not its constituent agencies such as the Department of the Navy. Consequently, Defendant maintains that notice to the Department of the Navy was insufficient as a matter of law to apprize the United States of Nationwide's subrogation interest. While no case appears to address adequate notice in the context of a subrogation interest under the FTCA, Defendant urges the Court to apply the "actual notice" requirement under Federal Rule of Civil Procedure 15(c), which allows a plaintiff to add a new defendant, and have the date of that amendment "relate back" to the date the original action was filed, thereby avoiding any limitations period. In order for Rule 15(c) to apply, however, the "new" party must have had "actual notice" of the action before the limitations period expired. Fed.R.Civ.P. 15(c).

To support its argument, Defendant cites *Hughes v. U.S.,* 701 F.2d 56 (7th Cir.1982), which holds that under Rule 15(c), notice to a government agency of a pending complaint is not sufficient notice to the United States. In *Hughes,* the Plaintiff erroneously sued the Department of Justice instead of the United States under the FTCA. When the Plaintiff attempted to amend its complaint, after the limitations period had expired, to substitute the United States as the appropriate party, the Seventh Circuit held that the "actual notice" requirement under Rule 15(c) had not been met, noting "[g]overnment agencies do not merge into a monol-

ith; the United States is an altogether different party from [other government agencies]." *Id.* at 58. While Defendant's reliance on Rule 15(c) is understandable, the Court, nonetheless, finds that the standard of "actual notice" under Rule 15(c) is too stringent to apply in the subrogation context.

The Supreme Court in *Schiavone v. Fortune*, 477 U.S. 21, 30–31, 106 S.Ct. 2379, 91 L.Ed.2d 18 (1986) noted that it did not have to make the "choice between a 'liberal' approach toward Rule 15(c), on the one hand, and a 'technical' interpretation of the Rule, on the other hand" because of what the rule provided in "plain language." Unlike Rule 15(c), which requires "actual notice", the cases concerning knowledge in the subrogation context are not based on any language in a statute or federal rule. Furthermore, the cases use the word "knowledge" and not "actual notice." *See, e.g., Guese v. Farmers Inter–Insurance Exchange*, 238 Ill.App.3d 196, 179 Ill.Dec. 383, 606 N.E.2d 215, 218 (1st Dist.1992) (listing cases).

In fact, cases outside of Illinois concerning "knowledge" in the subrogation context do not employ a strict definition. For instance, in *Aetna Casualty and Surety Co. v. Norwalk Foods, Inc.*, 125 Misc.2d 986, 480 N.Y.S.2d 851, 852 (1984) (emphasis added), the court held:

> Where a release has been obtained by a tort-feasor from an insured after the insured has already received payment from its insurer, the right of the latter to recover from the third-party tort-feasor exists only where the third party, at the time it settled with the insured, *knew or possessed information which reasonably pursued would* have given it knowledge of plaintiff's status as an insurer of the party whose property was damaged, and that the insurer had by payment been subrogated to the claim against the tort-feasor.

*See also Martin v. Commercial Union Ins.*, 935 F.2d 235, 240 (11th Cir.1991) (finding that "knowledge" can be actual or constructive); *Transamerica Insurance Co. v. Barnes*, 29 Utah 2d 101, 505 P.2d 783, 786 (1972) (same).

While these cases are not binding in the Seventh Circuit, they are persuasive in illustrating a more liberal understanding of the word "knowledge" than the stringent application of "actual notice" under Rule 15(c). Since Nationwide wrote at least three letters to the Department of the Navy, specifically requesting that its subrogation interest be protected, the Court finds that it would be too harsh to deny its recovery of the $31,360.97 it paid on behalf of its insured, especially considering the Department of the Navy specifically acknowledged Nationwide's subrogation interest in its correspondence. Furthermore, the Department of the Navy did not inform Nationwide that it needed to inform the United States of the subrogation interest—rather, it wrote Nationwide "This will again acknowledge your interest regarding the above-captioned incident." (See Pl.'s Memo. at Exhibit G.)

Finally, Nationwide complied with the requirements of the FTCA, and it should not now be penalized by a stringent interpretation of the word "knowledge." According to the FTCA, Nationwide was supposed to file an administrative claim with the appropriate government agency, which it undisputedly did. When the government agency later denied its claim, Nationwide sued the United States in federal court, which is the subject of the present litigation. Both parties acknowledge that the Department of the Navy had knowledge of the subrogation interest, and that Nationwide may only sue the United States to recover its subrogation lien. The Court, therefore, imputes the knowledge that the Department of the Navy had concerning Nationwide's subrogation interest to the United States. The Court finds that this result is consistent with the equitable principles underlying subrogation. *See, e.g., Matter of Federal Facilities Realty Trust*, 220 F.2d 495, 503 (7th Cir.1955) ("If it be urged that we are confronted with a novel situation to which subrogation

752

has, apparently, not been applied, the answer is that the doctrine was conceived as a process by which to accomplish equity and that there is no limit to the circumstances which may arise . . .").

### CONCLUSION

Both parties acknowledge that there are no material facts in dispute, and that this case should be decided as a matter of law. For the reasons set forth above, Plaintiff's Motion for Summary Judgment is hereby granted, and Defendant's Cross Motion for Summary Judgment is, therefore, denied.

**IT IS THEREFORE ORDERED** that: Plaintiff's Motion for Summary Judgment be, and the same hereby is, **GRANTED**.

**IT IS FURTHER ORDERED** that: Defendant's Cross Motion for Summary Judgment be, and the same hereby is, **DENIED**.